JOHN J. BUCKLEY & others *vs.* SECRETARY OF
THE COMMONWEALTH.

Suffolk.    September 13, 1976. — October 13, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Constitutional Law,* Initiative, General Court. *Initiative. Practice, Civil,* Parties.   *Words,* "Legislative substitute."

Qualified voters, who were signers of an initiative petition, had standing to bring an action to prohibit the defendant from placing on a ballot a legislative alternative to their petition. [197-198]

Under art. 48, The Initiative, III, § 2, of the Massachusetts Constitution, a legislative substitute for a measure introduced by initiative petition does not meet constitutional requirements if it relates only generally to the subject matter of the initiative petition. [198-200]

Where an initiative petition proposed the banning of possession and sale of private handguns, art. 48 of the Amendments to the Massachusetts Constitution prohibited the placing on the ballot as a legislative substitute a measure providing for mandatory prison sentences for use of a firearm in the commission of specified crimes. [200-203]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 21, 1976.

The case was reserved and reported, without decision, by *Braucher, J.*

*Robert G. Stewart* for the plaintiffs.

*Thomas R. Kiley,* Assistant Attorney General (*Louis A. Rizoli* with him) for the defendant.

*Frank T. Wojcik,* for Robert J. Vanni & others, amici curiae, submitted a brief.

*Robert I. Stewart,* amicus curiae, submitted a brief.

*James R. McIntyre,* Counsel to the Senate, *Dawn-Marie Keefe,* Assistant to the Senate Counsel, & *John F. Donovan,* Counsel to the House of Representatives, amici curiae, submitted a brief.

*Lewis H. Weinstein & Stephen B. Deutsch,* for the League of Women Voters of Massachusetts, amicus curiae, submitted a brief.

REARDON, J. This matter reaches us on reservation and report from a single justice. A declaratory judgment is being sought by the plaintiffs who include the first ten signers of an initiative petition entitled, "An Act banning the private possession and sale of handguns." They seek to establish that a measure proposed by the Legislature as a substitute for a qualified initiative petition is not in accordance with the requirements of art. 48 of the Amendments to the Constitution of the Commonwealth. They seek also an order prohibiting the defendant from placing the legislative substitute on the November, 1976, ballot as an alternative to the initiative petition. An initiative petition bearing the title referred to above, signed by the ten individual plaintiffs in this action and certified by the Attorney General as being in proper form for submission to the voters, was presented on December 3, 1975, by the plaintiffs to the Secretary of the Commonwealth, accompanied by forms containing 102,146 certified signatures. The petition was then sent to the clerk of the House of Representatives and the House proceeded to reject formally the law proposed by the petition. Thereafter, in May, 1976, a measure designated as a legislative substitute for the initiative petition was introduced (1976 House Bill No. 5081), and in June, 1976, both the House and the Senate voted to have this substitute appear on the November, 1976, ballot as an alternative to the initiative petition.[1] In the meantime six of the ten original signers filed with the Attorney General on May 28, 1976, an amendment to their petition, which amendment the Attorney General certified to be perfecting in nature. On July 7, 1976, the initiative petition was completed by filing with the Secretary of the

---

[1] We note that in the resolutions submitting 1976 House Bill No. 5081 to the people as a legislative substitute for the initiative measure there was a provision that 1976 House Bill No. 5081 "be designated on the ballot as the legislative substitute ... to be grouped with it [the initiative petition] as an alternative ...." It was further stated that "the ballot gives the voters an opportunity to vote for the proposed measure, or for the legislative substitute, or for both, or to vote against either or both." We do not pass on the propriety of these latter provisions.

Commonwealth 16,614 certified signatures in support of the petition as amended. The Secretary intends to print summaries of both the initiative petition and the legislative substitute on the general election ballot, and the summaries will be grouped and appear as question 5A and question 5B respectively.

The action which has been brought is a challenge on constitutional grounds to the validity of 1976 House Bill No. 5081 as an alternative. After hearing and following consideration of the arguments presented, this court issued an order, "That the legislative proposal known as House No. 5081 does not meet the requirements of Amendment XLVIII to the Massachusetts Constitution for a legislative substitute for the Initiative Petition entitled 'An Act banning the private possession and sale of handguns,' " and restraining the defendant from placing the proposition of 1976 House Bill No. 5081 on the November, 1976, ballot.

This opinion constitutes a statement of the reasons for the issuance of the order. This case is of first impression since it appears that a legislative substitute to a law proposed by initiative petition has never before appeared on a Massachusetts ballot. The 1976 House Bill No. 5081 provides mandatory sentences of imprisonment for use of a firearm in the commission of some fourteen crimes "for not less than the minimum sentence imposed by the judge for such crime." It further provides that any such sentence shall not be suspended nor shall the person convicted be eligible for probation, parole or furlough, or receive any deduction from his sentence for good conduct. The initiative petition, on the other hand, provides a comprehensive prohibition on the private ownership, possession or sale of handguns with certain exceptions for museum pieces and the like.

1. We consider first the standing of the plaintiffs to bring their complaint. Although some question has been raised in this regard, we see no problem with the position of these plaintiffs. Traditionally we have considered the first ten signers of an initiative or referendum petition to be proper parties in moving through the courts to protect

their petition. See *Cohen* v. *Attorney Gen.,* 354 Mass. 384 (1968); *Compton* v. *State Ballot Law Comm'n,* 311 Mass. 643 (1942); *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365 (1931). In fact, only through the recognition of this right could the ultimate objectives of art. 48 be attained. It is therein provided: "Legislative power shall continue to be vested in the general court; but the people reserve to themselves the popular initiative, which is the power of a specified number of voters to submit constitutional amendments and laws to the people for approval or rejection . . . ." I. Definition. Were the plaintiffs unable to protect their right by judicial review prior to an election, the very heart and spirit of this language might be abrogated. There can be no doubt that they have a right to bring this action for timely declaratory and injunctive relief.

2. We thus find ourselves presented with the important and novel question of the constitutionality of a legislative "substitute" for an initiative petition within the meaning of art. 48, The Initiative, III, § 2. The relevant part of that section provides, "The general court may . . . submit to the people a substitute for any measure introduced by initiative petition, such substitute to be designated on the ballot as the legislative substitute for such an initiative measure and to be grouped with it as an alternative therefor." "Substitute" and "alternative" are not defined in art. 48 and, thus, counsel have assisted the court by citation of relevant passages from the more than 1,000 pages of debate, 2 Debates in the Massachusetts Constitutional Convention, 1917-1918 (1918) (hereinafter "Debates"). Legislative history such as this is certainly open for consideration by the court in interpreting the above provision. *Barnes* v. *Secretary of the Commonwealth,* 348 Mass. 671 (1965). However, we refer to the Debates as one avenue only for construing the words of the amendment "in such way as to carry into effect what seems to be the reasonable purpose of the people in adopting [it]." *Raymer* v. *Tax Comm'r,* 239 Mass. 410, 412 (1921). This is particularly so where the language of the Debates is, by itself, less than disposi-

tive of the issue. We consider also that, as Chief Justice Rugg put it succinctly in *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365, 366 (1931), "[a]n amendment to the Constitution is a solemn and important declaration of fundamental principles of government. It is characterized by terse statements of clear significance. Its words were employed in a plain meaning to express general ideas. It was written to be understood by the voters to whom it was submitted for approval. It is to be interpreted in the sense most obvious to the common intelligence. Its phrases are to be read and construed according to the familiar and approved usage of the language." See cases cited at 367.

Initially we consider the aims of art. 48 in the light of the text and structure of the provision. There can be no doubt that it created a people's process. It was intended to provide both a check on legislative action and a means of circumventing an unresponsive General Court. It presented to the people the direct opportunity to enact statutes regardless of legislative opposition. It projected a means by which the people could move forward on measures which they deemed necessary and desirable without the danger of their will being thwarted by legislative action. As Mr. Joseph Walker of Brookline stated in the Constitutional Convention, "The principle of the initiative and referendum in its purity means that the people of this Commonwealth may have such laws and may have such a Constitution as they see fit themselves to adopt." Debates at 16. In truth, The Initiative, III, § 2, the legislative substitute clause, was complementary to the people's initiative process and is to be construed in the light of those portions of the amendment to which it clearly relates. To give an overbroad meaning to the word "substitute" in The Initiative, III, § 2, would allow the central purpose of the initiative process of art. 48 to be easily subverted. To become law an initiative petition must receive not only a majority of votes but also more votes than the legislative substitute with which it is grouped. The Initiative, VI. A "legislative substitute" which relates only generally to the subject matter of the people's petition might well block

the enactment of an initiative proposal supported by a majority of voters. And once defeated the initiative petition could not be presented to the voters again for six more years. The Initiative, II, § 3, as amended by art. 74.

When one looks at the language of art. 48 relating to a "legislative substitute," further support is found for the proposition that the Constitution is not satisfied if what the Legislature proposes as a substitute relates only generally to the subject matter of the initiative petition. This becomes clear since the amendment (art. 48) provides that any legislative substitute must be grouped with the initiative petition on the ballot as an alternative. The Initiative, III, § 2.

Moreover, art. 48, General Provisions, VIII, revoked the power of the Legislature, pursuant to the former art. 42, "to refer to the people for their rejection or approval at the polls any act or resolve of the general court . . . ." It would be unreasonable to construe the "legislative substitute" provision as restoring to the General Court the power to propose laws for popular enactment, except as true substitutes for initiative proposals.

3. The language and structure of art. 48 thus demand that a legislative substitute for an initiative petition must offer a true alternative and may not constitute a second approach which departs from the basic purpose of the initiative petition. We find this construction supported by the Debates on the amendment.

The original draft of the amendment submitted to the Constitutional Convention by the Committee on The Initiative and Referendum contained no clause concerning conflicting or alternative measures and no provision for legislative substitutes. Debates at 3-6. The minority report of the convention, submitted by seven of the fifteen committee members, questioned the general "wisdom and expediency" of popular enactment of statutes, Debates at 10, and also voiced specific objections to particular portions of the proposed amendment. The minority noted that no provision was made for revising an initiative petition once presented to the General Court: "Voters have no choice

save to pass or reject a measure exactly as framed by the petitioners. It may contain both good and bad provisions, but both must be accepted or rejected without amendment. ... Very few legislative measures are introduced in form or phrase deserving of final adoption. Whether one favors the initiative or not, he must face these objections ...." Debates at 13.

To meet this objection, Mr. Josiah Quincy proposed an amendment to the original draft providing that (1) conflicting or alternative measures proposed by initiative may be grouped together on the ballot and designated as such, and (2) the Legislature may, on its own motion, submit to the people a *substitute* for any measure introduced by initiative petition. The Quincy amendment required that such legislative substitute "be grouped with the ... [initiative proposal] as an alternative therefor." Debates at 765.

Remarks on the record by Mr. Quincy indicate the intention which underlay his proposal: "Now, in regard to the facility of amending a measure: I do not understand that my amendment changes the situation in respect to the amendment of an initiative petition proposed by the people. There is no provision in the amendment as it now stands for the amendment of the proposed measure after it reaches the Legislature. There is a pending amendment under my name which offers an opportunity for the addition by the Legislature of an alternative amendment, which is to that extent an opportunity to amend through submitting an alternative; but it is not consistent with the theory of this measure that the Legislature should have any opportunity to amend a measure as proposed by the initiative petition, at any rate not without the consent of the proposers." Debates at 634.

We read the Debates and the action thereon as vesting in the General Court a perfectly plausible right to edit, polish or amend an initiative proposal while retaining in that process the sense of the proposal so revised.[2]

---

[2] Such a change might be one which by appropriate language increased or decreased the classes of persons excepted from the operation

4. The handgun initiative petition and the Legislature's proposal in 1976 House Bill No. 5081 are consistent and harmonious and could well be enacted together. The handgun initiative petition would propose broad restrictions on the private ownership of pistols. The legislative proposal is more narrow, being substantially a crime control measure designed to deter the intentional use of firearms in certain specified crimes. As the plaintiffs argue, the Legislature's proposal is not the perfected version of the initiative petition but is quite different in content and effect. Common sense would indicate that it is not a substitute which could be contemplated by the language in art. 48. Certainly its result is far afield from that which is sought in the initiative petition. While this court is not concerned with the wisdom of the policies underlying either measure, *Opinion of the Justices,* 368 Mass. 831 (1975); *General Elec. Co.* v. *Kimball Jewelers, Inc.,* 333 Mass. 665 (1956), we note that the legislative proposal is a narrower, more conventional measure than the initiative petition. It is possible that those who oppose handguns to the extent of favoring confiscation of them would be prone to vote for stiffer sentences for gun-related crimes as well. Some other voters, on the other hand, might approve the legislative proposal but not the initiative petition. The initiative petition cannot be enacted unless it receives majority approval and also prevails over the legislative alternative.[3] We must agree that the plaintiffs' claim that the very presence of the Legislature's proposal on the ballot as a legislative substitute harms the plaintiffs.

In short, we cannot countenance the emasculation of the initiative petition by the attempt to substitute a measure with objectives at variance with those which the plaintiffs have proposed. To do so would be to fly in the face of the evident intent of the distinguished members of the Consti-

of the law in a manner supportive of the intrinsic objectives of the initiative.

[3] Article 48, The Initiative, V, § 1, also requires that the voters approving a law shall equal in number at least thirty per cent of the total number of ballots cast.

tutional Convention who prepared the way for the passage of art. 48 by the people. To allow 1976 House Bill No. 5081 to go on the ballot with the initiative petition here in question would interfere with the ability of the people to declare their position on the basic question originally proposed.

5. In view of the foregoing we see no necessity of discussing other issues which have been argued to us bearing on the question of matters specifically excluded from the initiative process. We hold that 1976 House Bill No. 5081 does not conform to the requirements of art. 48 of the Amendments to the Constitution of the Commonwealth for a legislative substitute for the initiative petition which we have discussed, and that the Secretary of the Commonwealth should be restrained from placing the proposition of 1976 House Bill No. 5081 on the November, 1976, ballot.