GORDON McCLOUD, J.
 

 ¶ 1 The people of the state of Washington exercised their constitutionally guaranteed initiative power by referring Initiative 940 (I-940), an initiative concerning police reform, to the legislature. The legislature voted to enact it. The enrolled bill doctrine-a doctrine that ensures judicial respect for the legislative branch-bars this court from second-guessing the legislature's own declaration that it validly enacted that bill into law. Specifically, the enrolled bill doctrine bars this court
 from invalidating the enrolled I-940 based on pure speculation about whether the legislature would still have enacted I-940 if it had not passed ESHB
 
 [1]
 
 3003 first. I-940 passed; the judiciary lacks the power to treat it as "not passed."
 

 ¶ 2 The legislature also passed a conditional bill, ESHB 3003, purporting to prospectively amend I-940 if it passed later-in this case, just a few minutes later. But that conditional, prospective bill violates the explicit language and carefully constructed allocation of legislative power contained in article II, section 1 of the Washington Constitution. That section of the constitution bars the legislature from amending an initiative during the same regular legislative session in which that initiative is first considered. The legislature might certainly disagree with an initiative
 and "propose a different one dealing with the same subject" to the Washington voters. WASH. CONST. art. II, § 1(a). But the legislature did not make such a "propos[al]" in this case, and the constitution does not empower a court to compel the secretary of state to put a nonproposal like ESHB 3003 on the ballot.
 

 ¶ 3 I would therefore reverse the superior court in part and vacate the writ of mandamus compelling the secretary of state to place I-940 on the ballot. A majority of this court, however, disagrees. For that reason, the decision of the superior court to issue a writ of mandamus compelling the secretary of state to place I-940 on the ballot is affirmed.
 

 OVERVIEW OF THE CASE
 

 ¶ 4 The Washington State Constitution vests the power to make laws in the legislature. But it also reserves some power to make laws in the people: the power to initiate laws directly, through initiatives to the people for election, and the power to initiate laws indirectly, through initiatives to the legislature.
 
 Id.
 

 ¶ 5 This case concerns the indirect legislative process. De-Escalate Washington referred I-940, regarding police reform, to the legislature for consideration during the 2018 regular legislative session. Article II, section 1(a) provides that once an initiative is certified to the legislature for consideration, the initiative "shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session." If the legislature fails to enact the certified initiative without change or amendment before the end of the regular session, the initiative "shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election" along with any alternative measure proposed by the legislature.
 
 Id.
 

 ¶ 6 In this case, the legislature "enacted" I-940, and it did so before the end of "such regular session." The parties focus their dispute on the impact of another bill enacted during that same regular session, ESHB 3003. ESHB 3003 was enacted right before I-940. It is entitled "AN ACT Relating to law enforcement; amending [creating and amending statutes and provisions of I-940]" and it purports to prospectively amend I-940 if I-940 were to pass in the future. LAWS OF 2018, ch. 10, § 10.
 
 [2]
 
 The first question for this court is whether the legislature enacted I-940 "without change or amendment ... before the end of [that] regular session," since the legislature also enacted ESHB 3003 in the same session. WASH. CONST. art. II, § 1(a). The second question is whether I-940 must appear on the November ballot either alone or with ESHB 3003.
 

 ¶ 7 I think it is clear that I-940 and ESHB 3003 were both validly enacted, despite the fact that ESHB 3003 purported to conditionally and prospectively amend I-940 before I-940 was enacted. I therefore conclude that neither I-940 nor ESHB 3003 may appear on the November ballot. But ESHB 3003 is invalid for a different reason: article II, section 1(a) of our state constitution bars the legislature from amending I-940 during the same session in which it was enacted, and ESHB 3003 purports to do just that. I would therefore vacate the writ of mandamus issued by the trial court to compel the secretary of state to place I-940 on the ballot.
 

 INITIATIVE HISTORY
 

 ¶ 8 When the Washington State Constitution was ratified in 1889, it vested all legislative power in the legislature. The constitution did not reserve any authority in the people to enact or repeal laws directly. But around that time, a deep-seated distrust of representative legislative bodies began to grow among the American people in general and Washington labor groups in particular.
 
 State ex rel. Berry v. Superior Court
 
 ,
 
 92 Wash. 16
 
 , 22,
 
 159 P. 92
 
 (1916). By the early 1900s, the people's distrust for their legislative representatives had developed into a national
 movement toward establishing the people's right to seek direct legislation through initiatives and to repeal laws through referenda.
 

 Id.
 

 ¶ 9 By the beginning of the 1900s, that movement toward direct legislation had arrived in Washington. Claudius O. Johnson,
 
 The Adoption of the Initiative and Referendum in Washington,
 
 35 PAC. NW. Q. 291, 295 (1944). Establishing direct legislation in Washington required a constitutional amendment; this in turn required a supermajority of legislators in the house and senate to pass the amendment. WASH. CONST. art. XXIII. To get these votes, community leaders from the Washington State Grange and other labor
 organizations began demanding that individual legislative candidates pledge their support for direct legislation and constitutional amendments by the people and for a constitutional amendment securing those rights.
 

 Id.
 

 ¶ 10 After more than a decade, these groups gained partial success: they secured direct legislative powers in Washington, but not constitutional amendment powers. The critical years were 1911-12. In 1911, an informal coalition of labor leaders from the Washington State Grange, the Direct Legislation League of Washington, the Washington State Federation of Labor, and the Farmers' Union banded together to coordinate and intensify their efforts to place direct legislative and constitutional amendment powers in the people. Johnson,
 
 supra,
 
 at 299;
 
 For Direct Legislation,
 
 SEMI-WKLY. ABERDEEN HERALD , Sept. 28, 1911, at 1; Henry K. Ensley, Operation of the Initiative and Referendum in the State of Washington 7 (1938) (unpublished M.A.P.S. thesis, State College of Washington) (on file with the Washington State Library). During the 1911 legislative session, the coalition "met each evening [in Olympia,] ... planned its work, reported on duties assigned, [and] centralized efforts where needed."
 
 Report of the Joint Legislative Committee Covering Session of 1911,
 
 THE LAB . J., Jan. 19, 1912, at 1. The coalition sought the recall of judges; the direct election of delegates to the national convention; the direct election of United States senators; the passage of an efficient corrupt practices act; the right of the people to seek constitutional amendments through direct legislation; and most relevant here, the initiative, referendum, and recall powers.
 
 For Direct Legislation, supra.
 

 ¶ 11 The coalition failed to persuade the legislature to enact a direct constitutional amendment process. But the coalition mostly succeeded in persuading the legislature to give the people a right to initiate and repeal statutes. Indeed, the 1911 legislature enacted the coalition-backed direct initiative and referendum bill-House Bill 153-with only a few changes. LAWS OF 1911, ch. 42. The legislature (1)
 

 increased by a few percentage points the number of signatures needed before an initiative or referendum could be certified to the people for election, (2) reduced the time within which the legislature was barred from amending or repealing an initiative or referendum "approved by a majority of the electors voting thereon" from four to two years, and (3) added a proviso that before an initiative could become law or a statute could be repealed by referendum, at least one-third of the voters participating in the general election must cast a vote for or against the measure. Johnson,
 
 supra,
 
 at 300; WASH. CONST. art. I, § 1. The coalition "acquiesced in these amendments, believing they were but slightly if at all detrimental to the successful working of the initiative and referendum."
 
 Report of the Joint Legislative Committee, supra.
 

 ¶ 12 The people then ratified House Bill 153, as revised, by popular vote on November 1912. That bill gave the people the authority to initiate and repeal statutes by initiative and referendum.
 

 ¶ 13 Since that time, legislative authority in Washington has been vested primarily in the legislature. But the constitution also "reserve[s] to [the people] the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature." WASH. CONST. art. II, § 1. The people can enact laws directly through "initiatives to the people" or indirectly through "initiatives to the legislature."
 
 Id.
 
 § 1(a).
 

 ¶ 14 The indirect process provides initiative proponents with three advantages over the direct process: the indirect process allows initiatives to become law sooner; it provides legislative feedback; and it results in two
 opportunities for the initiative to become law-first, by majority vote of the legislature, and second, if that fails, by majority vote of the people. This case involves that indirect process.
 FACTS AND PROCEDURAL HISTORY
 

 A. Proceedings in the Legislature regarding I-940
 

 ¶ 15 In 2017, a coalition of Washington residents and organizations concerned about police use of deadly force in Washington formed De-Escalate Washington to promote reform. They developed I-940. In order to get I-940 certified, De-Escalate Washington needed to collect 259,622 valid signatures. Clerk's Papers (CP) at 34. They collected 359,895 signatures.
 
 Id.
 
 After verifying a random sample of those signatures, Secretary of State Kim Wyman determined that the remaining unverified signatures likely contained the requisite number of valid ones.
 
 Id.
 
 She therefore certified I-940 to the legislature on January 23, 2018.
 
 Id.
 

 ¶ 16 The constitution sets the rules for how the legislature must proceed after receiving such a certified initiative; the portions that are especially relevant to this case are highlighted below:
 

 Such initiative measures, whether certified or provisionally certified [by the secretary of state],
 

 shall take precedence
 
 over all other measures in the legislature except appropriation bills
 
 and
 

 shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session.
 

 If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election.
 

 The legislature may reject any measure so proposed by initiative petition and propose
 
 a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people
 
 for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to
 the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made public. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law.
 

 WASH. CONST. art. II, § 1(a) (emphasis and underlining added).
 

 ¶ 17 As this quote shows, the constitution authorized the legislature to respond to I-940 in four ways. First, the legislature could have enacted I-940 "without change or amendment ... before the end of [that] regular session"; in that case, the initiative would become law unless the legislature chose or a sufficient number of residents demanded that the initiative be submitted to the people for a vote. Second, the legislature could have rejected I-940 outright; in that case, the initiative would be placed on the 2018 general ballot. Third, the legislature could have failed to act on I-940; in that case, the inaction would be treated as a rejection, and I-940 would appear on the ballot. Fourth, the legislature could have proposed a different measure dealing with the same subject; in that case, both I-940 and the proposed legislative alternative would appear on the 2018 general ballot in the form specified by the constitution. In sum, unless the legislature enacted I-940 "without change or amendment ... before the end of [the 2018] regular session," the secretary of state would have to place I-940 on the November 2018 ballot, either by itself or with a legislatively proposed alternative.
 
 [3]
 

 ¶ 18 Both the house and the senate passed I-940-without change or amendment in the
 body of that passed
 bill-on the last day of the general session, March 8, 2018. LAWS OF 2018, ch. 11.
 

 ¶ 19 But while 1-940 was still pending, the legislature also considered a separate bill-ESHB 3003-that purported to prospectively amend, clarify, and/or supplement parts of I-940, without a vote of the people, if the legislature later enacted I-940.
 
 [4]
 
 ESHB 3003 was introduced in the house on March 6, 2018, and passed the house on March 7-the day before the house passed I-940. LAWS OF 2018, ch. 10. The senate then passed ESHB 3003 and I-940 the next day, March 8, 2018.
 
 Id.
 
 at chs. 10, 11. The governor signed ESHB 3003 that day, but did not sign I-940 because the constitution does not require gubernatorial action on initiatives.
 
 [5]
 
 Thus, both ESHB 3003 and I-940 became law on the same day (March 8, 2018), though the legislature acknowledges that ESHB 3003 was enacted first.
 

 ¶ 20 The primary issues before this court are whether the legislature's enactment of ESHB 3003 immediately prior to and during the same regular legislative session as I-940 violated article II, section 1(a) of the Washington State Constitution, and if so, what are the consequences.
 

 B. Proceedings in the Trial Court
 

 ¶ 21 Tim Eyman and state Senator Mike Padden of the 4th Legislative District challenged the validity of I-940 and ESHB 3003 in Thurston County Superior Court via petition for writ of mandamus. They moved for summary judgment, arguing that the legislature violated article II, section l(a)'s requirement that initiatives to the legislature be "enacted or rejected" "without change or amendment" "before the end of such regular session" on the ground that the legislature enacted I-940 at the same time as ESHB 3003, and ESHB
 

 3003 was a "change or amendment" to I-940. CP at 82-95. They argued this meant that I-940 was never truly enacted "without change or amendment." They sought the remedy of compelling the secretary of state to place both I-940 and ESHB 3003 on the ballot.
 

 ¶ 22 The trial court agreed with Eyman and Padden that the legislature's decision to enact both I-940 and ESHB 3003 violated the constitution but for different reasons. It ruled that ESHB 3003 was not validly enacted because the constitution requires initiatives to "take precedence" over other legislation, and it interpreted that language to mean that I-940 had to be enacted or rejected first, before ESHB 3003 was enacted. Verbatim Report of Proceedings (Apr. 20, 2018) (VRP) at 58. As for I-940, the trial court acknowledged that a majority of the legislature passed I-940 "without change or amendment" but questioned whether those same legislators would have voted for I-940 if they had voted on it first, before ESHB 3003. The trial court reasoned, "What we know is when the legislature voted on I-940, every legislator knew that the substantive amendments contained [in] ESHB 3003 had already been approved by both houses and signed by the governor. Votes held in reverse could have resulted in something different."
 
 Id.
 
 at 61. The court said, "If there had been no ESHB 3003, would there have been enough votes in one or both houses to pass I-940 as written? Would it then have-if it had passed both houses, would the governor have signed it as law?"
 
 Id.
 
 at 60. Given this uncertainty about what legislators might have done, the trial court concluded that the legislature did not really pass I-940.
 

 ¶ 23 The trial court therefore issued a writ of mandamus compelling the secretary of state to place I-940-by itself-on the November 2018 ballot. CP at 253. The trial court rejected Eyman and Padden's arguments that ESHB 3003 should appear as an alternative measure on the ballot along with I-940.
 
 Id.
 
 The court reasoned that the legislature did not propose ESHB 3003 as an alternative measure and
 ESHB 3003 could not be
 listed on the ballot as a stand-alone provision, either-it is incomplete and written only as a conditional, prospective amendment to I-940. VRP at 62. ESHB 3003 states that it "takes effect ... only if ... (Initiative Measure No. 940) ... is passed" and that it "is void in its entirety" "[i]f the initiative is not approved" by the legislature. LAWS OF 2018, ch. 10, § 10. The trial court also did not rewrite ESHB 3003 into a viable stand-alone alternative itself.
 

 C. Proceedings in the Washington Supreme Court
 

 ¶ 24 The legislature and De-Escalate Washington appealed the trial court's ruling directly to this court. Lieutenant Governor Cyrus Habib moved to intervene, raising arguments similar to those of the legislature and De-Escalate Washington in defense of I-940 and ESHB 3003.
 
 [6]
 
 This court's commissioner granted the lieutenant governor's motion to intervene.
 

 ¶ 25 Eyman and Padden cross appealed from the trial court's refusal to compel the secretary of state to place ESHB 3003 on the November 2018 ballot as an alternative measure to I-940.
 

 ¶ 26 The secretary of state did not appeal. She has indicated, however, that she needs a ruling by August 31, 2018, to ensure that ballots are timely delivered to military personnel overseas.
 

 ¶ 27 We retained this case for direct review, granted the parties' emergency motion for accelerated review, and accelerated the date for oral argument.
 

 ISSUES
 

 A. Was I-940 validly enacted and constitutional? (Short answers: yes and yes.)
 

 B. Was ESHB 3003 validly enacted and constitutional? (Short answers: yes, the enrolled bill doctrine bars this court from overruling the legislature's certification that ESHB 3003 was enacted in a procedurally regular manner; but no, it is unconstitutional because it violates article II, section 1(a) ).
 
 [7]
 

 STANDARD OF REVIEW
 

 ¶ 28 This case concerns the interpretation of the constitutional requirement that an initiative to the legislature "shall" be enacted (or rejected) "without change or amendment ... before the end of such regular session." WASH. CONST. art. II, § 1(a). Constitutional interpretation [is] a question of law that we review de novo.
 
 Wash. Citizens Action of Wash. v. State
 
 ,
 
 162 Wash.2d 142
 
 , 151,
 
 171 P.3d 486
 
 (2007) (citing
 
 Pierce County v. State
 
 ,
 
 150 Wash.2d 422
 
 , 429,
 
 78 P.3d 640
 
 (2003) ).
 

 ¶ 29 As discussed in the above initiative history section, the initiative power "is nearly as old as our constitution itself, [is] deeply ingrained in our state's history, and [is] widely revered as a powerful check and balance on the other branches of government."
 
 Coppernoll v. Reed,
 

 155 Wash.2d 290
 
 , 296-97,
 
 119 P.3d 318
 
 (2005). Because of this, we have repeatedly affirmed the judiciary's responsibility to protect "this potent vestige" of Washington's progressive past from encroachment or interference.
 
 Id.
 
 at 297,
 
 119 P.3d 318
 
 (citing
 
 In re Estate of Thompson,
 

 103 Wash.2d 292
 
 , 294-95,
 
 692 P.2d 807
 
 (1984) ). In fulfillment of that duty, "this
 court has consistently applied the rule that such provisions will be liberally construed to the end that the right of initiative be facilitated."
 
 Thompson,
 

 103 Wash.2d at 294-95
 
 ,
 
 692 P.2d 807
 
 (citing
 
 Sudduth v. Chapman
 
 ,
 
 88 Wash.2d 247
 
 , 251,
 
 558 P.2d 806
 
 ,
 
 559 P.2d 1351
 
 (1977) );
 
 see
 

 State ex rel. Evich v. Superior Court
 
 ,
 
 188 Wash. 19
 
 , 27-28,
 
 61 P.2d 143
 
 (1936) (quoting
 
 State ex rel. Case v. Superior Court
 
 ,
 
 81 Wash. 623
 
 , 632,
 
 143 P. 461
 
 (1914) ).
 

 ANALYSIS
 

 A. The Legislature Enacted I-940 "Without Change or Amendment ... before the End of [the] Regular Session" in Accordance with the Procedure Specified in Article II, Section 1(a) ; For That Reason, This Court Cannot Compel the Secretary of State to Place It On the Ballot
 

 1. I-940 Was Enacted "Without Change or Amendment
 
 ...
 
 before the End of [the] Regular Session"
 

 ¶ 30 If the legislature enacts an initiative "without change or amendment ... before the end of [the] regular session," that initiative becomes law-unless the legislature refers it to the people for a vote or a sufficient number of people demand that it go to the voters for a referendum. WASH. CONST. art. II, § 1(a), (b).
 

 ¶ 31 In this case, the legislature did not refer I-940 to the people, and the people did not demand the right to vote on I-940 before the time for seeking such a referendum expired, that is, before June 7, 2018. CP at 86; WASH. CONST. art. II, § 1(c) (setting the deadline for seeking a voter referendum at "ninety days after the adjournment of the session at which [the act] was enacted"). Instead, the legislature "enacted" I-940 as signed by the 359,895 voters during the signature gathering stage and certified by the secretary of state.
 

 ¶ 32 The speaker of the house and the lieutenant governor as president of the senate certified that I-940 was enacted "without change or amendment." Opening Br. of the Wash. State Legislature at 26 (observing that "constitutional majorities in both houses voted for I-940"); Opening Br. of Cyrus Habib at 2 (noting that "a majority of both chambers voted in favor of I-940, and the Lieutenant Governor and Speaker of the House properly certified its passage"). Indeed, the official session law for I-940 confirms that the legislature enacted I-940 as proposed by the initiative proponent, De-Escalate Washington. LAWS OF 2018, ch. 10, § 4(1).
 

 ¶ 33 The question here is whether I-940 was really enacted "without change or amendment ... before the end of [the] regular session," given that the legislature enacted a separate bill, ESHB 3003, right before it enacted I-940. In other words, the question for us is whether ESHB 3003 alters the legislative certification that I-940 was enacted without change or amendment.
 
 [8]
 
 As discussed below, ESHB 3003 does not alter that certification.
 

 2. Under the Enrolled Bill Doctrine, ESHB 3003 Does Not Alter That Conclusion
 

 ¶ 34 Eyman and Padden argue that I-940 was not enacted "without change or amendment" because a separate bill, ESHB 3003, titled "AN ACT Relating to law enforcement; amending [creating and amending statutes and provisions of I-940]," LAWS OF 2018, ch. 10, purported to change and amend I-940. Br. of Resp'ts & Cross-Appellants at 22-24.
 

 ¶ 35 As discussed immediately above, I-940 itself was passed as proposed. Eyman and Padden are really arguing that we should look behind the certification by the speaker of the house and the lieutenant governor, acting in his capacity as president of the senate, that I-940 passed as proposed.
 

 ¶ 36 The enrolled bill doctrine bars this court from doing that. The constitution forbids this court from disregarding enacted
 statutes without first declaring them invalid or unconstitutional. This means that if an enrolled bill is "fair on its face," it is "impervious to collateral attack."
 
 State ex rel. Wash. Toll Bridge Auth. v. Yelle
 
 ,
 
 61 Wash.2d 28
 
 , 34,
 
 377 P.2d 466
 
 (1962). " '[T]he courts will make no investigation of the antecedent history connected with its passage, except as such an investigation may be necessary in case of ambiguity in the bill for the purpose of determining the legislative intent.' "
 

 Id.
 

 (quoting
 
 State ex rel. Dunbar v. State Bd. of Equalization
 
 ,
 
 140 Wash. 433
 
 , 443,
 
 249 P. 996
 
 (1926) ).
 

 ¶ 37 The enrolled bill doctrine serves as a constitutional backstop that prevents the judiciary from overstepping its role. The doctrine is rooted in the constitutional separation of powers, as well as "respect for the legislature's role as a coequal branch of government 'in no way inferior to the judicial branch.' "
 
 Brown v. Owen
 
 ,
 
 165 Wash.2d 706
 
 , 723,
 
 206 P.3d 310
 
 (2009) (quoting
 
 Wash. State Grange v. Locke,
 

 153 Wash.2d 475
 
 , 500,
 
 105 P.3d 9
 
 (2005) ). Like the enrolled bill doctrine, the principle of separation of powers ensures that the fundamental functions of each coordinate branch of government remain inviolate.
 
 Carrick v. Locke,
 

 125 Wash.2d 129
 
 , 135,
 
 882 P.2d 173
 
 (1994). Separation of powers "recognizes that each branch of government has its own appropriate sphere of activity,"
 
 Hale v. Wellpinit Sch. Dist. No. 49,
 

 165 Wash.2d 494
 
 , 504,
 
 198 P.3d 1021
 
 (2009), and that one branch of government cannot " 'threaten[ ] the independence or integrity or invade[ ] the prerogatives of another.' "
 
 Carrick,
 

 125 Wash.2d at 135
 
 ,
 
 882 P.2d 173
 
 (quoting
 
 Zylstra v. Piva
 
 ,
 
 85 Wash.2d 743
 
 , 750,
 
 539 P.2d 823
 
 (1975) ). Thus, once a bill has been certified
 by the legislature as having been passed, that certification is " 'conclusive upon each of the other [branches of government],' " including the judiciary.
 
 Brown,
 

 165 Wash.2d at 723
 
 ,
 
 206 P.3d 310
 
 (quoting
 
 State ex rel. Reed v. Jones,
 

 6 Wash. 452
 
 , 461-62,
 
 34 P. 201
 
 (1893) ).
 

 ¶ 38 The trial court violated the enrolled bill doctrine by invalidating I-940 based on the fact that ESHB 3003's passage preceded I-940's passage and the possibility that some legislators might not have voted for I-940 if they had known the court would invalidate the separate bill, ESHB 3003. VRP at 60-61. The enrolled bill doctrine bars this court from investigating whether individual legislators were deceived into voting for an enrolled bill as a basis for invalidating that bill.
 
 Wash. Toll Bridge Auth.
 
 ,
 
 61 Wash.2d at 33-34
 
 ,
 
 377 P.2d 466
 
 . I would therefore reverse the trial court's order invalidating I-940 and directing the secretary of state to place I-940 on the November 2018 ballot. (Five members of this court, however, would not; as a result, the superior court's decision to issue a writ of mandamus compelling placement of I-940 on the November ballot is affirmed.)
 

 3. Any Other Conclusion Would Undermine the Purpose of Article II, Section 1(a), Which Is To Protect Initiatives
 

 ¶ 39 This conclusion is also compelled by the purpose of article II, section 1(a) : the protection of initiatives. Article II, section 1(a) protects initiatives by restricting the legislature's ability to modify them. If an initiative is certified to the legislature for consideration, the legislature must enact or reject the initiative "without change or amendment" or else the initiative must go to the voters for decision. WASH. CONST. art. II, § 1(a). If the initiative is approved by the voters, then the legislature is barred from amending or repealing the initiative for two years (absent a supermajority). WASH. CONST. art. II § 1(c). Article II, section 1 was clearly intended to ensure that initiatives are voted on as presented. Both the legislature and the lieutenant governor certified that I-940 passed as presented.
 

 ¶ 40 The trial court's decision to invalidate I-940 despite the fact that, on its face, it appears to have been validly enacted "without change or amendment," undermines that constitutional purpose. It also violates our case law: our precedent establishes that we have a duty to "liberally" construe article II, section 1"to the end that the right of initiative be facilitated."
 
 Thompson
 
 ,
 
 103 Wash.2d at 294-95
 
 ,
 
 692 P.2d 807
 
 .
 

 4. Conclusion as to the Validity of I-940
 

 ¶ 41 I would therefore reverse the trial court and hold that I-940 was validly enacted, consistent with the enrolled bill doctrine and with our duty to liberally construe
 article II, section 1 to facilitate the people's initiative power. However, a majority of this court disagrees. For that reason, the court affirms the trial court's decision to issue a writ of mandamus to compel the secretary of state to place I-940 on the November ballot.
 

 B. The Enrolled Bill Doctrine Bars This Court from Questioning the Legislature's Decision That ESHB 3003 Was Validly Enacted, but ESHB 3003 Violates Article II, Section 1(a) so It Is Constitutionally Invalid; For That Reason, This Court Cannot Compel the Secretary of State To Put It on the Ballot
 

 ¶ 42 The next question is whether ESHB 3003 is constitutionally valid. We conclude that under the enrolled bill doctrine discussed above, ESHB 3003 was validly enacted by a majority vote in the house and senate. But under our controlling precedent, ESHB 3003 itself violates article II, section 1, which drastically limits the legislature's ability to amend initiatives that the people have proposed.
 

 1. ESHB 3003 Violates the Express Constitutional Bar on Amendments "Before the End of Such Regular Session" of Article II, Section 1 (a)
 

 ¶ 43 We start with the language of the constitution. Article II, Section 1(a) says that when the legislature
 receives an initiative, it shall be "enacted or rejected without change or amendment ... before the end of such regular session." Under the last antecedent rule of statutory construction, courts construe the final qualifying words and phrases in a sentence to refer to the last antecedent unless a contrary intent appears in the statute.
 
 Berrocal v. Fernandez
 
 ,
 
 155 Wash.2d 585
 
 , 593,
 
 121 P.3d 82
 
 (2005) (quoting
 
 In re Sehome Park Care Ctr., Inc.,
 

 127 Wash.2d 774
 
 , 781,
 
 903 P.2d 443
 
 (1995) ). " 'The last antecedent is the last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence.' "
 

 Id.
 

 (emphasis omitted) (quoting
 
 In re Estate of Kurtzman,
 

 65 Wash.2d 260
 
 , 264,
 
 396 P.2d 786
 
 (1964) ).
 

 ¶ 44 Applying the last antecedent rule, the final clause, "before the end of such regular session," certainly applies to the immediate antecedent-"without change or amendment."
 

 ¶ 45 Indeed, the parties all agree that that last clause, "before the end of such regular session," applies to the first clause in that sentence-"shall ... enact[ ] or reject[ ]." But that final modifying clause can't possibly apply to a clause two antecedents back, and skip over the "without change or amendment" clause in between. Thus, textually, article II, section 1(a) requires the legislature to enact or reject an initiative "without change or amendment ... before the end of such regular session."
 
 [9]
 

 ¶ 46 It is plain from the face of I-940 and ESHB 3003 that ESHB 3003 was a change or amendment done before the end of that regular legislative session in which I-940 was enacted. LAWS OF 2018, chs. 11 (I-940 was enacted during the "2018 Regular Session"), 10 (ESHB 3003 was enacted
 during the "2018 Regular Session"). The enrolled bill doctrine allows us to rely on those documents. I would hold that ESHB 3003 violates article II, section 1(a), and I would invalidate it in its entirety.
 

 ¶ 47 The legislature argues that I-940 was not amended before the end of the session because ESHB 3003 did not become
 
 effective
 
 until after the referendum period expired. I disagree. There is no support for the notion that an amendment is enacted on the date that it becomes effective, rather than on the date on which it was enacted. Indeed, there is support for the opposite rule: the rule that an amendment is enacted on the date that it is enacted.
 
 [10]
 

 2. If There Were Any Ambiguity about the Meaning of That Plain Language, This Court Would Interpret It in Favor of Preserving the Framework of Article II, Section 1(a) and (c)
 

 ¶ 48 As mentioned above, article II, section 1 restricts the legislature's authority to enact, amend, defer, and reject legislation in "explicit" ways.
 
 Dep't of Revenue v. Hoppe
 
 ,
 
 82 Wash.2d 549
 
 , 557,
 
 512 P.2d 1094
 
 (1973). First, the constitution states that unless the legislature enacts the initiative as is "
 
 without change or amendment
 
 ...
 
 before the end of [the] regular session
 
 ," the initiative must go to the voters. WASH. CONST. art. II, § 1(a) (emphasis added). Second, the constitution states that legislative consideration of the initiative must "
 
 take precedence
 
 " over other legislative
 matters except for appropriation bills.
 

 Id.
 

 (emphasis added). Third, the constitution states that if the legislature enacts the initiative, the initiative
 
 "shall be subject to the
 

 referendum petition."
 
 Id.
 

 (emphasis added). Fourth, the constitution states that if the legislature rejects the initiative, the voters have an absolute right to vote on the initiative,
 

 id.
 

 , and if the voters approve the initiative, then the legislature is
 
 prohibited from "amend[ing] or repeal[ing]" that initiative "within a period of two years following such enactment"
 
 absent a supermajority vote in the house and senate. WASH. CONST. art. II, § 1(c) (emphasis added).
 

 ¶ 49 These constitutional provisions secure for the people the right to vote on initiatives presented to the legislature if the legislature does not enact the initiative as certified within that regular legislative session. Should the legislature enact the initiative, then that legislative body is bound by that enactment. If the legislature could amend initiatives immediately upon enactment, this carefully drawn balance of legislative power between the legislature and the people would be destroyed. Such an interpretation would therefore be inconsistent with our duty to "liberally construe[ ]" article II, section 1(a)"to the end that the right of initiative be facilitated."
 
 Thompson,
 

 103 Wash.2d at 294-95
 
 ,
 
 692 P.2d 807
 
 . The people have the right to vote on initiatives that are not enacted as certified without change or amendment by the legislature by the end of the regular legislative session.
 

 3. We Reject the Legislature's Argument That It Can Amend Initiatives Anytime It Wants Unless Its Amendments Show a Conscious, Subjective, Intent To Deceive the People; That Test Is Not Supported by
 
 Lowry,
 
 and It Is Inconsistent with Other Precedent from This Court
 

 a. The Constitution Does Not Tolerate Clever Legislation Intended To Undermine Its Structure
 

 ¶ 50 The legislature argues that despite this constitutional language and structure, it has the power to amend
 initiatives at any time unless those amendments constitute a " 'palpable attempt at dissimulation' "; it extrapolates this test from
 
 Washington State Legislature v. Lowry,
 

 131 Wash.2d 309
 
 ,
 
 931 P.2d 885
 
 (1997) (quoting
 
 State ex rel. Hamilton v. Martin,
 

 173 Wash. 249
 
 , 257,
 
 23 P.2d 1
 
 (1933) ).
 

 ¶ 51 Basically, the legislature argues that
 
 Lowry
 
 compels us to use a single, very restrictive test for determining whether it has infringed on the authority of another branch, i.e., the people. The legislature argues that under that test, we must affirm legislative action " 'unless [such action] is obviously designed to circumvent [another branch's constitutional powers] and is a "palpable attempt at dissimulation." ' " Opening Br. of Wash. State Legislature at 16 (quoting
 
 Wash. State Legislature v. State
 
 ,
 
 139 Wash.2d 129
 
 , 140,
 
 985 P.2d 353
 
 (1999) (quoting
 
 Lowry,
 

 131 Wash.2d at 320-21
 
 ,
 
 931 P.2d 885
 
 ) ). The legislature treats this as a subjective inquiry about the intent of individual legislators. The
 legislature refers to this as the "
 
 Lowry
 
 test."
 
 Id.
 
 at 17.
 

 ¶ 52 The issue of whether the legislature can evade the constitutional requirement that it submit the initiatives that it does not like to the people by enacting those initiatives as certified and then immediately amending them (either before or after) is a question of first impression in this state. No other state has addressed this precise situation either.
 
 [11]
 
 But we have invalidated similar attempts by one branch of government to infringe the power of another branch through clever legislation or creative conditional initiatives. And we have not required a showing that the infringement be a subjective, conscious attempt at "dissimulation" by specific legislators before doing so.
 

 ¶ 53 For example, in
 
 Lee v. State
 
 , we considered a creative attempt by the people to attain a
 
 constitutional
 
 amendment through their initiative power even though the people's initiative power is limited to
 
 statutory
 
 lawmaking.
 
 185 Wash.2d 608
 
 ,
 
 374 P.3d 157
 
 (2016). The Washington Constitution, however, limits the initiative power to enactments or amendments (not constitutional changes). The initiative proponent therefore characterized the proposal as a statutory tax cut. As a practical matter, however, that tax cut served as a coercive measure to force the legislature to enact a constitutional amendment on tax reform or else suffer a crippling $1.4 billion-per-year tax cut. This court ruled that such a " 'do this or else' structure ... establishes a new process for amending the constitution" not "contemplated by the constitution."
 
 Id.
 
 at 629,
 
 374 P.3d 157
 
 . We therefore invalidated the initiative as unconstitutional.
 

 Id.
 

 We did not require proof of intentional, subjective "dissimulation" to reach that conclusion.
 

 ¶ 54 The Massachusetts Supreme Judicial Court struck down a similar "do this or else" type of appropriations legislation in a case in which the hostile actor was the legislature (not the people).
 
 Opinion of Justices to House of Representatives,
 

 384 Mass. 828
 
 , 832,
 
 428 N.E.2d 117
 
 (1981). That court explained that such coercive use of appropriation powers is impermissible: "if through the appropriation process, the Legislature were able to compel the Governor either to accept general legislation or to risk forfeiture of appropriations for a department of government, the careful balances of powers ... would be destroyed, and the fundamental principle of separation of powers ... would be substantially undermined."
 

 Id.
 

 (citing
 
 Opinion of Justices to House of Representatives,
 

 384 Mass. 820
 
 , 825,
 
 425 N.E.2d 750
 
 (1981) )
 

 ¶ 55 In fact, in
 
 Lowry
 
 itself, the case from which the legislature takes its proposed test, this court took a similar path: we focused on the effect the legislative act had on the constitutional division of legislative power rather than on
 any subjective intent to thwart the constitution. In
 
 Lowry
 

 ,
 
 we addressed the constitutionality of a different coercive tactic: the legislature's decision to use hostile formatting to evade the governor's power to veto legislation.
 
 131 Wash.2d at 320-32
 
 ,
 
 931 P.2d 885
 
 . In Washington, our constitution limits the governor's veto power to "entire section[s]" of a bill (except for appropriation items). WASH. CONST. art. III, § 12. The legislature sought to limit the likelihood that the governor would exercise his veto power by combining all of its legislative provisions into a single section with each subsection repealing a specific statute even though the statutes were not necessarily interrelated. Thus, in order to save one specific statute, the governor would have had to veto the entire section, even if he agreed with the legislature that the other statutes should be repealed. We held that such clever formatting was an unconstitutional abuse of the legislative power because it infringed on the veto power of the governor-even though the legislature technically did not violate any specific language in the constitution. We explained that while we would ordinarily defer to the legislature's designation of separate sections in a bill, we would not do so when that designation
 clearly undermines the powers of a coordinate branch of government.
 
 Lowry,
 

 131 Wash.2d at 320-32
 
 ,
 
 931 P.2d 885
 
 . To be sure, we characterized the legislature's action as a " 'palpable attempt at dissimulation.' "
 
 Id.
 
 at 320,
 
 931 P.2d 885
 
 (quoting
 
 State ex rel. Hamilton,
 
 173 Wash, at 257,
 
 23 P.2d 1
 
 ). But, in practice, we did not demand proof that the legislators harbored individual, subjective animosity or the desire to deceive. We applied a legal analysis and ruled that the legislature's actions were inconsistent with the constitutional balance of legislative power between the legislature and the governor.
 

 ¶ 56 Applying a similar analysis, the Massachusetts Supreme Judicial Court struck down a clever attempt by the Massachusetts Legislature to curtail the people's initiative power.
 
 Buckley v. Secretary of Commonwealth,
 

 371 Mass. 195
 
 ,
 
 355 N.E.2d 806
 
 (1976). Massachusetts, like Washington,
 has an indirect initiative process that allows the people to present initiatives to the legislature for approval; if the legislature enacts, that enactment avoids the need for a popular vote on the measure.
 
 Id.
 
 at 199-200,
 
 355 N.E.2d 806
 
 . The Massachusetts Legislature, like the Washington Legislature, can present the voters with its own "substitute" measure, along with the original initiative, to choose between.
 

 Id.
 

 But in Massachusetts, unlike in Washington, if the substitute measure presented by the Massachusetts Legislature wins, then the people are barred from presenting another initiative on that topic for six years.
 

 Id.
 

 In
 
 Buckley
 
 , the Massachusetts Legislature sought to defeat the people's initiative for reform of firearm ownership laws and to obstruct the people's ability to present further initiatives on that topic for six years. It did so by presenting a "substitute" bill that addressed firearms only tangentially.
 
 Id.
 
 at 197,
 
 355 N.E.2d 806
 
 . Unlike the people's initiative, which essentially banned private firearm ownership, the legislature's "substitute" bill established firearm sentencing enhancements for certain serious crimes.
 

 Id.
 

 The substitute bill did not address firearm ownership. The Massachusetts Supreme Judicial Court held that while the Massachusetts Constitution did not expressly prohibit the legislature's acts, "[t]he language and structure of [the constitution] thus demand that a legislative substitute for an initiative petition must offer a true alternative and may not constitute a second approach which departs from the basic purpose of the initiative petition."
 
 Id.
 
 at 200,
 
 355 N.E.2d 806
 
 . To hold otherwise, the court explained, would "countenance the [debilitation] of the initiative petition," "fly in the face of the evident intent of the distinguished members of the Constitutional Convention," and "interfere with the ability of the people to declare their position on the basic question originally proposed" by the initiative.
 
 Id.
 
 at 202-03,
 
 355 N.E.2d 806
 
 .
 

 ¶ 57 In this case, no one is claiming that the legislature acted in bad faith to invalidate I-940. VRP at 59. But under the rule of
 
 Lee, Lowry,
 
 and these persuasive out-of-state
 cases, the legislature has impermissibly circumvented the balance of power between the legislature and the people that is built into the constitution. The legislature did so by enacting I-940 "without change or amendment," yet amending it immediately as a practical matter via passage of an almost contemporaneous bill. Regardless of whether the legislature's actions constitute a conscious, intentional, "palpable attempt at dissimulation," they are constitutionally impermissible under our caselaw.
 

 ¶ 58 It does not matter that the proponent of I-940 (De-Escalate Washington) acquiesced in ESHB 3003. The right to vote on initiatives presented as is, "without change or amendment," did not belong to De-Escalate Washington. It belonged to the individuals who supported and signed I-940 and to the voting public. The legislature deprived them of their constitutional right under article II, section 1(a) to compel the legislature to enact or reject I-940 as certified, regardless of whether it satisfies what the legislature calls the "
 
 Lowry
 
 test."
 

 b. The Legislature Acknowledges That Its Restrictive "
 
 Lowry
 
 Test" Is Not Supported by the
 
 Lowry
 
 Decision Itself
 

 ¶ 59 The legislature itself seems to acknowledge that there is more to the constitutional analysis here than just its intent-based "
 
 Lowry
 
 test." The legislature acknowledges that even if the constitution does not contain an express restriction on its ability to
 amend an initiative once enacted by it, the constitution contains an implied principle that it cannot legislate in a manner that infringes on the legislative powers of a coordinate branch of government-here, the people.
 
 [12]
 
 Opening Br. of Wash. State Legislature at 12. I agree with the legislature that our constitution contains
 an implicit principle protecting the constitutional allocation of legislative powers from encroachment.
 

 ¶ 60
 
 Lowry
 
 did not purport to overrule that constitutional structure by reference to the legislature's "palpable attempt at dissimulation." In
 
 Lowry,
 
 we said that the " 'palpable attempt at dissimulation' " test is satisfied if "we discern legislative drafting that so alters the natural sequences and divisions of a bill [so as] to circumvent the Governor's veto power....
 
 Lowry,
 

 131 Wash.2d at 320
 
 ,
 
 931 P.2d 885
 
 (quoting
 
 State ex rel. Hamilton,
 
 173 Wash, at 257,
 
 23 P.2d 1
 
 ). Thus, the real
 
 Lowry
 
 test simply reflects the implied constitutional principle that one branch of government cannot infringe on the legislative powers secured by the constitution to the other coordinate branches through creative or clever legislation. Indeed, the legislature acknowledges that the real
 
 Lowry
 
 test is not so stringent in other parts of its brief.
 
 E.g.,
 
 Opening Br. of Wash. State Legislature at 16, 21. As the legislature recognizes, the real
 
 Lowry
 
 test is satisfied if the legislature acted to " 'substantially deprive[ ] [the electorate of] the fair opportunity to exercise its constitutional prerogatives as to legislation.' "
 

 Id.
 

 at 21
 
 (alterations in original) (quoting
 
 Lowry,
 

 131 Wash.2d at 320
 
 ,
 
 931 P.2d 885
 
 ).
 

 ¶ 61 The legislature, however, claims that it did not violate the real
 
 Lowry
 
 test.
 

 Id.
 

 I disagree. The legislature's decision to pass ESHB 3003 deprived the voters and the individuals who signed the petition in favor of I-940 of their right under article II, section 1(a) to have the legislature enact I-940 as certified or send it to the ballot for a vote.
 
 [13]
 

 4. Conclusion as to the Validity of ESHB 3003
 

 ¶ 62 I would hold that ESHB 3003 was validly enacted but is unconstitutional. The express language of article II, section 1(a) states that I-940 must be "either enacted or rejected without change or amendment by the legislature before the end of [the] regular
 session." That language carefully allocates powers between the legislature and the people. The legislature's decision to pass a separate bill that purported to conditionally and prospectively amend the people's initiative during the regular legislative session in which that initiative passed violates article II, section l(a)'s express language and the implied allocation of legislative power that it creates.
 

 CONCLUSION
 

 ¶ 63 A majority of this court agrees that ESHB 3003 is void and unenforceable and, hence, that we cannot compel the secretary of state to place it on the ballot. I believe that the legislature properly and validly enacted I-940; that I-940 complies with article II, section 1(a) ; and hence, that
 this court lacks the power to compel the secretary of state to place I-940 on the ballot. A majority of this court, however, disagrees.
 

 ¶ 64 As a result, a majority of this court affirms the superior court's decision to issue a writ of mandamus compelling the secretary of state to place I-940 on the ballot.
 

 WE CONCUR:
 

 Wiggins, J.
 

 Gonzales, J.
 

 "ESHB" refers to Engrossed Substitute House Bill.
 

 Section 10 states:
 

 This act takes effect June 8, 2018, only if chapter ... (Initiative Measure No. 940), Laws of 2018, is passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative under Article II, section 1 of the state Constitution is not certified by the secretary of state. If the initiative is not approved during the 2018 regular legislative session, or if a referendum on the initiative is certified by the secretary of state, this act is void in its entirety.
 

 I-940 could also be on the ballot in 2018, even if passed by the legislature "without change or amendment ... before the end of such regular session," if a sufficient number of people demanded a referendum on it. Wash. Const. art. II, § 1(a), (b).
 

 ESHB 3003 was a compromise amendment developed by De-Escalate Washington (the proponent of I-940) along with other stakeholders, including law enforcement.
 

 Wash. Const. art. II, § 1(d) ("The veto power of the governor shall not extend to measures initiated by ... the people.").
 

 The lieutenant governor intervened in this appeal because the issues in this case arguably affect his duties as the president of the senate. Wash. Const. art. II, § 10.
 

 Our colleagues object to the way we frame the issues because asking whether I-940 was "validly enacted" as a first step highlights the problem with their approach, i.e., that they compel the secretary of state to place I-940 on the ballot despite the fact that it fits squarely within the definition of an enacted enrolled bill. Dissent in part (Madsen, J.) at 1201; Dissent (Stephens, J.) at 1204 n.3. But we frame the issues that way because the constitution demands that we do so. The enrolled bill doctrine is a constitutional doctrine. It is based on the constitution's implied separation of powers and the judiciary's respect for the legislature as a coequal branch of government. It means that this court cannot invalidate a passed, "enrolled" bill just because we disagree with it or think the legislature should have passed it in a different manner. For that reason, we cannot reject the legislature's certification that I-940 was duly enacted; an initiative goes to the ballot only "[i]f it is rejected or if no action is taken upon it by the legislature before the end of [the] regular session." Wash. Const. art. II, § 1(a).
 

 The attorney general's 1971 opinion does not answer these questions. 1971 Op. Att'y Gen. No. 5. That opinion addressed only whether the legislature may "make any changes
 
 in the text of an initiative
 
 to the legislature without, thereby, being required to submit its altered version of the initiative to the people as an alternative for the original initiative."
 
 Id.
 
 at 2 (emphasis added). Everyone (including the legislature) agrees that an in-text change is not allowed. But we are not dealing here with an in-text amendment. We are dealing with a completely separate bill. The principle that an in-text change is not allowed thus has absolutely no bearing on this case.
 

 This interpretation is supported further by other language in article II, section 1(a) and (c). Section 1(a) provides that enacted initiatives "shall be subject to the referendum petition." This means that an enacted initiative cannot become effective until after the referendum period has expired. Section 1(c) defines the referendum period as "ninety days
 
 after the adjournment of the session at which [the act\ was enacted
 
 ." (Emphasis added.) If an initiative cannot become effective until 90 days after the end of the session, it makes sense that the initiative cannot be amended until at least the end of that session.
 

 We treat the date of enactment as the date of enactment for related purposes. For example, we have addressed the somewhat similar issue of whether the two-year bar against legislative amendments to initiatives approved by the people begins with the date of enactment or begins with the effective date. We held that because the two-year bar applies " 'following such
 
 enactment
 
 [of the initiative],' " that language means the date of enactment controls.
 
 State v. Gibbons
 
 ,
 
 118 Wash. 171
 
 , 176-77,
 
 203 P. 390
 
 (1922) (quoting Wash. Const. art. II, § 1(c) ). The bar on changes to amendments before the end of the regular legislative session also refers to the "enactment]" of initiatives. It states the legislature must "enact[ ] ... without change or amendment ... before the end of such regular session." Wash. Const. art. II, § 1(a). That language suggests that no companion bill amending the initiative can be enacted during the same session as the initiative.
 

 Only seven other jurisdictions have an indirect initiative process like ours, where the people can propose statutory initiatives first to the legislature and then to the people if the legislature does not enact them. Those jurisdictions are Maine, Massachusetts, Michigan, Nevada, Ohio, Utah, and the United States Virgin Islands. In contrast, three jurisdictions (Arizona, Alaska, and Wyoming) have a legislative override, where the legislature can block a people's initiative by enacting its own competing legislation.
 

 When acting under their initiative and referendum powers, the people are acting as a fourth branch of government.
 
 Wash. State Farm Bureau Fed'n v. Reed
 
 ,
 
 154 Wash.2d 668
 
 , 676,
 
 115 P.3d 301
 
 (2005) (explaining "article II, section 1 provides a 'fourth element [to the three branches of government], the people, reserving the right to assert its will over the legislative department of the government' " (alteration in original) (quoting
 
 State ex rel. Brislawn v. Meath,
 

 84 Wash. 302
 
 , 317-18,
 
 147 P. 11
 
 (1915) ) ).
 

 The trial court held that ESHB 3003 violated article II, section l(a)'s "takes precedence" language. VRP at 58. Recall that section 1(a) states that when an initiative is certified to the legislature for approval or rejection, the initiative ...
 
 shall take precedence over all other measures in the legislature except appropriation bills
 
 and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session." Wash. Const. art. II, § 1(a) (emphasis added). The trial court interpreted that "take precedence" language to mean that the legislature must act on the initiative before enacting legislation on topics covered by the initiative. VRP at 58. Because ESHB 3003 was enacted before I-904 (albeit in the same day) and both cover the same topic of police reform, the trial court determined that ESHB 3003 was invalid. Because I invalidate ESHB 3003 based on different language in article II, section 1(a), and the allocation of powers it creates, I do not address whether the "take[s] precedence" language commands the same result.
 

 In addition, the legislature contends that it has plenary power to amend 1-940
 
 at any time,
 
 as long as the amendments do not take effect until after the period for seeking a referendum has expired. Opening Br. of Wash. State Legislature at 2 ("There is no express Constitutional provision forbidding [ESHB 3003's] enactment, and thus it was a proper exercise of the Legislature's plenary power.");
 
 accord
 
 1971 Op. Att'y Gen. No. 5, at 11-13 (questions 9 and 10). This argument appears to be based on the fact that 1-940 was enacted by the legislature without referral to an election and, hence, might not be subject to article II, section l(c)'s two-year bar on amending (absent a supermajority) legislation that was "approved by a majority of the electors voting thereon." In contrast, Eyman and Padden contend that "[i]f the legislature adopted I-940 without change, then ... [I-940] cannot be amended within the next two years except by a vote of two thirds of both houses of the legislature." CP at 91 (citing Wash. Const. art. II, § 1(c) ). Because I invalidate ESHB 3003 based on the language of article II, section 1(a) and its allocation of powers between the legislature and the people, I do not address the applicability of section l(c)'s two-year bar on initiatives enacted by the legislature either.