IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE CONSTRUCTION, INC., a Washington Corporation, | ) ) ) | No. 78753-5-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF SAMMAMISH, a governmental entity, PORTER BROTHERS CONSTRUCTION, INC., a Washington Corporation, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| HARTFORD FIRE INSURANCE COMPANY, a corporation, Bond No. 52BCSDL1582, | ) ) ) ) | |
| Respondent. | ) ) | FILED: January 13, 2020 |

ANDRUS, J. — State Construction, Inc., a subcontractor on a public works project, challenges the dismissal of its lien and bond claims. Because its claims were untimely, we affirm.

FACTS

In May 2014, Porter Brothers Construction, Inc. contracted with the City of Sammamish (City) to construct the Sammamish Community & Aquatic Center (the

Project).[1]  The City and Porter Brothers entered into an American Institute of Architects Standard Form Agreement between Owner and Contractor (AIA Agreement).  Under this agreement, Porter Brothers invoiced the City monthly, and when the City paid the invoice, it retained five percent of the funds owed to Porter Brothers, as required by RCW 60.28.011.[2]  A retainage fund totaling $1,351,472 is now on deposit in an escrow account at Heritage Bank pursuant to a retainage agreement between Porter Brothers and the City.

Porter Brothers subcontracted with State Construction on June 10, 2014, to perform certain excavation and utilities work.  State Construction began this work shortly thereafter.

Porter Brothers also obtained a payment and performance bond[3] for the value of the Project, $28 million, from Hartford Fire Insurance Company.  On October 12, 2015, Hartford filed a Uniform Commercial Code (UCC) financing statement against Porter Brothers, attaching, as collateral for debts owed to Hartford, Porter Brothers' interest in any payments due to the contractor, including monies to which it might be entitled from retainage funds.

---

[1] The Project involved the construction of a 69,000 square foot building with a 6-lane, 25-yard lap pool and other spaces, a parking structure and surface parking lot, and an access loop road.

[2] RCW 60.28.011(1)(a) required the City to hold back a contract retainage not to exceed five percent of the moneys earned by the contractor and to deposit the retained funds into a trust fund for the protection and payment of claims and state taxes and penalties.  This is commonly referred to as a retainage fund.

[3] RCW 39.08.010(1)(a) provides that on public improvement projects, contractors must post a performance and payment bond to ensure that they have the financial ability to perform all provisions of the contract; to pay all laborers, mechanics, subcontractors, and material suppliers; and to pay all state taxes, increases, and penalties.  Contractor bonds guarantee that the contractor will perform the contract and will pay bills for labor and materials for which it contracts.  11 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D, § 163:10 (2005).  If the contractor defaults, the surety agrees to pay an owner's damages up to the limit of the bond and to pay claims of unpaid subcontractors and suppliers.  Id.

Porter Brothers subsequently executed multiple "Irrevocable Assignment" documents, in which it assigned to Hartford any right to payment it had on several outstanding projects, including this Project. The assignment at issue here, executed November 3, 2015, included the right to receive any portion of the retainage funds held by the City:

> FOR VALUE RECEIVED, the undersigned, Porter Brothers Construction, Inc., . . . hereby irrevocably assigns, transfers and sets over to Hartford Fire Insurance Company . . . all Contract Funds of any nature, including, but not limited to, progress payments, earned or unearned funds, change orders, extras, claims of any nature, retainages, with all the interest accruing thereon, and whether said Contract Funds are due now or in the future under the . . . contract [for the Project].

The City determined that the Project was "substantially complete" on April 1, 2016.[4] The building was operational at that point and, according to the City, punch list items[5] were completed thereafter. State Construction completed punch list items in June 2016.

At some point around this time, Porter Brothers experienced financial difficulty and notified the City it was abandoning the contract because it was unable to complete the work. After Porter Brothers' voluntary default, Hartford stepped in

---

[4] Although the record does not contain a complete copy of the City's AIA Agreement with Porter Brothers, they executed the AIA Standard Form of Agreement Between Owner and Contractor, Document A101-2007, which, in section 9.1.2, incorporated by reference AIA Document A201-2007, General Conditions of the Contract for Construction (General Conditions). Under paragraph 9.8.1 of the General Conditions, "substantial completion" is defined as "the stage in the progress of the Work when the Work . . . is sufficiently complete . . . so that the Owner can occupy or utilize the Work for its intended use." WERNER SABO, LEGAL GUIDE TO AIA DOCUMENTS § 4.56 SUBSTANTIAL COMPLETION: ¶ 9.8, at ¶ 9.8.1 (6th ed. 2019); see also 1 JONATHAN J. SWEET, SWEET ON CONSTRUCTION INDUSTRY CONTRACTS: MAJOR AIA DOCUMENTS § 15.14, at 627-28 (5th ed. 2009).

[5] Under paragraph 9.8.2 of the General Conditions, when the contractor considers the work substantially complete, the contractor submits a list of items needing to be corrected before final payment. LEGAL GUIDE TO AIA DOCUMENTS § 4.56 SUBSTANTIAL COMPLETION: ¶ 9.8, at ¶ 9.8.2. This list is known as the punch list. SWEET ON CONSTRUCTION INDUSTRY CONTRACTS: MAJOR AIA DOCUMENTS § 15.14, at 628.

and paid certain debts, including monies owed to union trust funds for employee fringe benefits and dues, and materials and supplies furnished by various companies.

The City stated in discovery that landscaping work was completed on August 31, 2016. The landscaping subcontractor testified that it completed its punch list work in November 2016. The City received as-built drawings on January 13, 2017. Porter Brothers indicated that the last subcontractor to perform services on the Project was Milne Electric, which completed its work on January 19, 2017. In discovery, the City stated that "Porter Brothers, by and through its subcontractors, was performing work under the contract through February 2017, of which the City has no[] specific knowledge. After February 21, 2017, warranty work was completed."[6]

On February 21, 2017, the City's council passed a resolution recognizing the "[P]roject was substantially completed by the contractor on April 1, 2016," accepting the Project as officially complete, and authorizing the contract closure process. The City filed a notice of completion with the state agencies, pursuant to RWC 60.28.051, on April 13, 2017, listing the "Date Work Completed" as "4/1/2016," and the "Date Work Accepted" as "2/21/2017."

On March 27, 2017, State Construction filed with the City a notice of a lien claim against the retainage fund and notified Hartford of its claim against the bond

---

[6] The General Conditions contains an express warranty that the work will be free from defects and conform to the design documents. LEGAL GUIDE TO AIA DOCUMENTS § 4.17 WARRANTY: ¶ 3.5. The warranty period runs for one year after substantial completion of the contract. Id. at § 4.70 CORRECTION OF WORK: ¶ 12.2, at ¶ 12.2.2.1; see also Patrick J. O'Connor, Jr., Warranties, Guarantees, and Correction Remedies under the AIA Document A201 (1997), Constr. Law. 19, 24 (1998). Any work a contractor must perform to correct deficiencies is known in the construction industry as "warranty work."

for $250,462.27. State Construction later amended its claim against the retainage fund to $199,205.66 and claimed to be owed another $7,295.16 on unpaid invoices.

On April 28, 2017, State Construction filed suit against the City, Porter Brothers, and Hartford. State Construction sought to foreclose on its lien against the retainage fund, to collect the amounts it was owed from Hartford's bond or from the City, and to obtain a judgment against Porter Brothers for the amount owed under its subcontract.

In March 2018, Porter Brothers stipulated to the entry of judgment against it in favor of State Construction, in the amount of $199,205.66.[7]

In May 2018, State Construction and Hartford filed cross-motions for summary judgment. State Construction sought judgment against Hartford and the City for $199,205.66, or an order requiring Hartford to pay State Construction's lien from the retainage fund. Hartford contended the claims were time barred under RCW 39.08.030 and RCW 60.28.011(2).

The trial court dismissed State Construction's claims against the City. It further granted summary judgment for Hartford, concluding that while the retainage fund "is a statutorily authorized trust and may not be assigned to the general contractor's creditors," State Construction's lien claim was not timely filed and, as a result, was not enforceable against the retainage fund. The order did not separately address State Construction's claim against Hartford's bond but dismissed all claims against Hartford.

---

[7] State Construction waived its claim to $7,295.16 in unpaid bills.

The trial court awarded $20,012.21 in attorney fees to Hartford under RCW 39.04.240. State Construction appeals.

## ANALYSIS

State Construction contends the trial court erred in concluding that its lien claims against Hartford's bond and the retainage fund were time barred. State Construction also maintains that if the notices were untimely, it resulted from the City's failure to notify it of the date of substantial completion, in violation of due process.

State Construction alternatively argues that even if its lien claims are untimely, it is still entitled to be paid out of the retainage fund because Porter Brothers unlawfully assigned the retainage funds to Hartford, and its stipulated judgment against Porter Brothers is a valid lien against any funds to which Porter Brothers is otherwise entitled. Finally, State Construction contends the trial court erred by awarding Hartford attorney fees.

## A. Standard of Review

We review summary judgment orders de novo, performing the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860, 93 P.3d 108 (2004). A court may grant summary judgment if the evidence, viewed in a light most favorable to the nonmoving party, establishes there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c); Hisle, 151 Wn.2d at 861.

B. State Construction's Bond and Retainage Claims

    1. RCW 39.08.030—Performance Bond

State Construction first contends the trial court erred in dismissing its claim against Hartford's performance bond. It argues that its notice was timely under RCW 39.08.030(1)(a). We disagree.

Subcontractors may bring a claim against a performance bond for any completed work, but

> such persons do not have any right of action on such bond for any sum whatever, unless within [30] days from and after the completion of the contract with an acceptance of the work by the affirmative action of the . . . city . . . , the . . . subcontractor . . . must present to and file with such . . . city . . . a notice in writing [in a form set out in the statute].

RCW 39.08.030(1)(a).

The City passed a resolution on February 21, 2017, accepting the Project as complete as of that date. State Construction concedes that the City "accept[ed] the Project as complete," as required by the statute, on February 21, 2017. It further concedes that it filed its lien claim notice with the City 34 days after the date of acceptance. It argues, however, that its notice should be considered timely because the statute requires both "completion of the contract" and "acceptance of the work" to occur before the 30-day deadline is triggered. It contends there are questions of fact as to whether contract completion occurred before or after February 21, 2017.

Hartford contends that the City's certification of the date of completion and acceptance is legally conclusive and that State Construction cannot factually

- 7 -

challenge the certification.[8] When a subcontractor initiates a lien foreclosure action, rather than file an answer, a public owner certifies

> the name of the contractor; the work contracted to be done; the date of the contract; the date of completion and final acceptance of the work; the amount retained; the amount of taxes certified due or to become due to the state; and all claims filed with it showing respectively the dates of filing, the names of claimants, and amounts claimed.

RCW 60.28.030 (emphasis added).

The City initially certified the date of completion to be the same date as the date of final acceptance—February 21, 2017. But the City amended its certification to distinguish between the "date of completion" and the "date of final acceptance." In its amended filings, the City certified the date of completion as April 1, 2016—the date it identified as the date of substantial completion under the contract.

RCW 60.28.030 does not explicitly provide that a certification is conclusive proof of the date of contract completion under either the bond or retainage statute. The Washington Supreme Court, however, considered a similar argument in Denny-Renton Clay & Coal Co. v. National Surety Co., 93 Wash. 103, 160 P. 1 (1916),[9] and Pearson v. Puget Sound Machinery Depot, 99 Wash. 596, 169 P. 961 (1918). In Denny-Renton, the plaintiff supplied bricks for a street improvement project in Wenatchee. 93 Wash. at 104. The engineer certified the work as complete on November 25, 1913, even though there remained "cleanup work" to

---

[8] A "conclusive presumption," or "irrebuttable presumption," is "[a] presumption that cannot be overcome by any additional evidence or argument because it is accepted as irrefutable proof that establishes a fact beyond dispute." BLACK'S LAW DICTIONARY 1435 (11th ed. 2019).

[9] Superseded by statute, LAWS OF 1915, ch. 28, § 2 (requiring affirmative action of a public body to effectuate acceptance), as recognized in Nat'l Blower & Sheet Metal Co. v. Am. Sur. Co. of N.Y., 41 Wn.2d 260, 264, 248 P.2d 547 (1952).

be completed, including the removal of unused bricks and tarpaulins and sand from the pavement. Id. at 107-08.

The Court held that the engineer's certification constituted the city's legal acceptance and that this acceptance was binding on the contractor and the brick supplier. Id. at 110. It held that "[t]he fact that the 'cleanup work' was done after the engineer certified that the work was [100 percent] completed [wa]s immaterial." Id. The date certified by the public owner could not be undermined except by evidence of fraud or collusion on the part of the owner or its agent. Id. Because the plaintiff had no evidence of fraud or collusion, the Court concluded it could not rebut the certified contract completion date. Id.

Similarly, in Pearson, a subcontractor filed a claim against a surety bond on a Port of Seattle construction project 31 days after the Port engineer certified the building complete and the Port, by resolution, accepted it. 99 Wash. at 598. The Court deemed the bond claim untimely because the subcontractor had no evidence that the engineer concealed the certificate of completion and both the certificate and the Port's resolution accepting the work were public records. Id. at 599. Quoting Denny-Renton, the Court reiterated that the engineer's certificate and the Port's resolution of acceptance were legally binding on the subcontractor. Id. at 599-600.

Under Denny-Renton and Pearson, a public owner's resolution—deeming the project complete and accepting the project—is legally conclusive absent evidence of fraud or collusion by the public owner in the certification or acceptance process. We have seen no evidence of any fraud or collusion here. State Construction's evidence regarding work activities undertaken after April 1, 2016 is

thus immaterial and insufficient to preclude entry of summary judgment. See Jacobsen v. City of Seattle, 98 Wn.2d 668, 671, 658 P.2d 653 (1983) (disputes over immaterial facts are not a bar to summary judgment). We conclude that the City's formal resolution accepting the Project as complete is legally conclusive and triggered the bond claim filing deadline of RCW 39.08.030.[10]

Nevertheless, State Construction contends that the City's resolution, on its face, demonstrates that the contract was not complete because it authorized the deputy city manager to take steps "to complete the contract closure process." One of the key steps to closing out a public works contract, it maintains, is the filing of a "Notice of Completion of Public Works Contract" with the State, as required by RCW 60.28.051.[11] State Construction argues the City filed this notice on April 13, 2017, and that the "completion of the contract" for purposes of the bond lien statute did not occur until then.

The meaning of a statute is a question of law reviewed de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our primary

---

[10] For this reason, we reject State Construction's argument that work still in progress in 2016 and 2017 creates a genuine issue of material fact. Moreover, State Construction's punch list argument appears contrary to the language in the City's AIA Agreement with Porter Brothers. Paragraph 5.2.1.1 provided that the City would issue final payment to Porter Brothers after Porter Brothers fully performed the contract, "except for the Contractor's responsibility to correct Work." This provision demonstrates that the parties had agreed that "full performance of the contract" did not include punch list work. The bond statute does not preclude a public owner from accepting a contract as complete before all punch list work has been finished. See Seattle Plumbing Supply Co. v. Md. Cas. Co., 151 Wash. 519, 521-22, 276 P. 552 (1929) (school board's acceptance of project as complete, "subject to terms as to repair of any defective work discovered within a year . . . and subject to all necessary clean-up work," is complete for purposes of bond claim); Nat'l Blower & Sheet Metal Co., 41 Wn.2d at 267 (clarifying that Seattle Plumbing "hold[s] squarely that an acceptance subject to necessary clean-up work does not make the acceptance conditional").

[11] Under RCW 60.28.051, the public owner must notify various state agencies when a contract is completed and cannot release any of the retained funds until the state agencies certify that all taxes or any other money owed to the state by the contractor have been paid or can be paid without recourse to the state's lien on the retained percentage.

duty in interpreting a statute is to discern and implement the legislature's intent. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Statutory interpretation begins with the statute's plain meaning. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

Well-established rules of statutory construction lead us to conclude that the phrase "completion of the contract" refers to completion of the contract by the contractor, not by the public owner. Had the legislature used the language "completion of the contract and acceptance of the work by the public owner," we might conclude that the prepositional phrase "by the public owner" modifies both preceding phrases. But the legislature did not use this language. Instead, it used the phrase "completion of the contract with an acceptance of the work by the affirmative action of the [public owner]." RCW 39.08.030 (emphasis added). Under the last antecedent rule of statutory construction, courts construe the final qualifying words and phrases in a sentence to refer to the last antecedent unless a contrary intent appears in a statute. Eyman v. Wyman, 191 Wn.2d 581, 599, 424 P.3d 1183 (2018). Thus, under this rule, the prepositional phrase "by the affirmative action of [the public owner]" modifies only "acceptance of the work," and not the phrase "completion of the contract."

State Construction also relies on the fact that RCW 39.08.030 refers to "completion of the contract" while the language used in the retainage lien statute, RCW 60.28.011(2), refers to "completion of the contract work." It argues that because the legislature used different language in the two statutes, it must have intended different meanings. It maintains that the omission of the word "work" after "contract" in RCW 39.08.030 means that the City's post-acceptance activities can

- 11 -

delay the trigger date for bond claims.

But we find no material difference between "completion of the contract" and "completion of the contract work" as those phrases are used in the bond and retainage lien claim statutes. Although chapter 39.08 RCW does not contain definitions, a related public works statute—chapter 39.04 RCW—does. The definitions in this related statute provide context for evaluating State Construction's arguments here. See Lake, 169 Wn.2d at 526 (courts discern plain meaning from the ordinary meaning of the language at issue, the statute's context, related provisions, and the statutory scheme as a whole).

RCW 39.04.010(2) defines "contract" to mean "a contract in writing for the execution of public work for a fixed or determinable amount duly awarded after advertisement and competitive bid." The term "public work" is defined as "all work, construction, alteration, repair, or improvement . . . executed at the cost of the state or of any municipality." RCW 39.04.010(4). The focus of these definitions is clearly on the physical execution of construction activities performed by a contractor, not administrative activities performed by the public owner.

Furthermore, State Construction has not identified any authority for the proposition that "completion of the contract" as used in RCW 39.08.030(1)(a) occurs only after a public owner completes its internal administrative closure process or files a notice of completion required by RCW 60.28.051. Where a party fails to cite to relevant authority, we generally presume that the party found none. Edmonds Shopping Cen. Assocs. v. City of Edmonds, 117 Wn. App. 344, 353, 71 P.3d 233 (2003).

State Construction's argument is also unsupported by the City's AIA

- 12 -

Agreement with Porter Brothers. Article 3 refers to the dates of commencement, substantial completion, and final completion of "the Work." And article 5 ties final payment to when "the Contractor has fully performed the Contract." The parties appear to have treated completion of the contract to equate to completion of the contract work by Porter Brothers.

We agree with State Construction that the use of the preposition "with" to link the two events (contract completion and acceptance of work) means that the bond claim filing deadline does not trigger until both events occur. But the City's AIA Agreement with Porter Brothers did not permit it to accept the contractor's work before Porter Brothers completed it. Paragraph 5.2 of the AIA Agreement provided that the City would not make final payment of "the entire unpaid balance of the Contract Sum" to the contractor until "the Contractor has fully performed the Contract" and "Final Acceptance has occurred." The contract itself indicates the City would not accept the work until Porter Brothers had fully performed the contract.[12]

Our construction of the bond lien statute is consistent with the historical understanding of its requirements. As Hartford persuasively contends, the construction industry and our courts have long understood the deadline for a claim against a bond to coincide with the public owner's acceptance of the work. See Seattle Plumbing Supply Co. v. Md. Cas. Co., 151 Wash. 519, 522, 276 P. 552

---

[12] Acceptance has significant ramifications for a project owner. The owner is acknowledging that the work conforms to the applicable contract quality and quantity requirements and that title and risk of loss pass from the contractor to the owner. 4A BRUNER & O'CONNOR ON CONSTRUCTION LAW § 13:58 (2019 Update). Moreover, acceptance is generally the commencement of any warranty period set out in the contract. Id. State Construction's suggestion that the City issued a final acceptance before Porter Brothers fully performed its contractual obligations is not supported by the record.

(1929) (materialmen's notice of claim, filed more than 30 days after school board accepted contract as complete, was deemed untimely); Pearson, 99 Wash. at 600 (materialman's claim against bond deemed untimely when filed 31 days after port commission passed resolution accepting warehouse as completed); C-Star Concrete Corp. v. Hawaiian Ins. & Guar. Co., 8 Wn. App. 872, 874, 509 P.2d 758 (1973) (filing period runs 30 days after acceptance of work).

Finally, State Construction asks the court to conclude that it "substantially complied" with the bond statute by filing a lien claim 34 days—rather than 30 days—after the City's acceptance of the Project. This argument runs contrary to well-established law that a person claiming the benefits of a statutory lien must demonstrate strict compliance with the time deadline in the statute. Kinskie v. Capstin, 44 Wn. App. 462, 464, 722 P.2d 876 (1986); see also Shope Enters., Inc. v. Kent Sch. Dist., 41 Wn. App. 128, 131, 702 P.2d 499 (1985) (courts strictly construe time deadlines in lien statutes).

A party asserting substantial compliance must demonstrate:

> (1) that some notice must be filed with the proper body; (2) that it must be filed within at least [30] days from the completion of the contract and acceptance of the work; (3) that there must be some identification of the bond, surety, and work; and (4) that there must be some notice of an intent to claim against the bond.

Foremost-McKesson Sys. Div. of Foremost-McKesson, Inc. v. Nevis, 8 Wn. App. 300, 303-04, 505 P.2d 1284 (1973) (quoting Fid. & Deposit Co. of Md. v. Herbert H. Conway, Inc., 14 Wn.2d 551, 558, 128 P.2d 764 (1942)). A subcontractor cannot establish substantial compliance if it failed to meet the 30-day deadline.

Keller Supply Co., Inc. v. Lydig Construction Co., Inc., 57 Wn. App. 594, 789 P.2d 788 (1990), on which State Construction relies, does not provide

otherwise. In Keller, a plumbing materials supplier sent a timely preclaim lien notice to a project owner. Id. at 596, 599. The only alleged deficiency in the notice was the failure to state specifically that the supplier would look to the contractor's bond or retainage for any claim in the case of nonpayment. Id. at 596, 598. This court deemed the form of the notice substantially complied with the statute because it identified the job for which Keller supplied materials and specifically stated that Keller intended to claim a lien if it was not paid. Id. at 599-600.

But Keller's holding—relating to the form of a notice—has never been extended to resuscitate an untimely notice. To the contrary, in Pearson, the Supreme Court held that a subcontractor's bond claim, filed 31 days after the port commission certified a building as complete and accepted it, was one day late and thus untimely. 99 Wash. at 598-600. Pearson remains good law.

State Construction was required to file its bond claim no later than March 23, 2017. The City did not receive it until four days later. As a result, State Construction's right to assert a claim against the performance bond under RCW 39.08.030 expired, and the trial court properly dismissed its claim against the bond.

2. RCW 60.28.011(2)—Retainage Fund

State Construction makes similar arguments regarding its retainage fund claim. If a contractor fails to pay a subcontractor, the subcontractor may seek recovery directly from the retainage fund according to a specific statutory procedure:

> Every person performing labor or furnishing supplies toward the completion of a public improvement contract has a lien upon moneys reserved by a public body under the provisions of a public

improvement contract. However, the notice of the lien of the claimant must be given within [45] days of completion of the contract work, and in the manner provided in RCW 39.08.030.

RCW 60.28.011(2). The timeliness of State Construction's retainage lien claim thus depends on whether it served notice on the City within 45 days of the "completion of the contract work."

Hartford contends State Construction's lien was not timely filed because it was sent almost a year after the date of substantial completion, April 1, 2016, the date the City certified as the date of "completion of the contract work." It again argues the City's certification is legally conclusive and cannot be challenged factually by State Construction. We agree. State Construction is bound by the City's determination that the contract work was complete as of April 1, 2016.

State Construction argues, however, that the statute does not set as the trigger date the date of "substantial completion of the contract work," and Hartford is impermissibly injecting a word into the statute that does not exist. It also contends the trigger date for filing a retainage fund lien claim should be the same as the trigger date for filing a bond lien claim—February 21, 2017. To support this argument, State Construction submitted a publication from the Municipal Research and Services Center (MRSC), a non-profit organization that helps local governments in Washington serve their citizens "by providing legal and policy guidance on any topic."[13] State Construction's President, Phuong Busselle, testified that she relied on this publication in closing out some of the company's public works contracts. In the MRSC overview of "required steps that local

---

[13] About MRSC, MRSC: LOCAL GOVERNMENT SUCCESS, http://mrsc.org/Home/About-MRSC.aspx.

governments in Washington State must take to officially complete a public works contract," it provides the following "Practice Tip:"

> The contract documents should clarify that for the purposes of the retainage statute (RCW 60.28.011), "completion of all contract work" is the same as "date of final acceptance" in the performance and payment bond statute (RCW 39.08.010). This means that the trigger date for retainage release will be the same as the trigger date for filing claims.

The problem with relying on an Internet summary of the law, however, is that it may be incorrect. The retainage statute does not refer to "completion of <u>all</u> contract work." It merely states "completion of <u>the</u> contract work." While the retainage statute may allow a local government to contractually deem the date of "completion of the contract work" to be the date of final acceptance, rather than the date of substantial completion, we find nothing in the language of the statute mandating that outcome.[14]

Indeed, the general conditions of a construction contract often define what constitutes completion of the contract work. <u>See</u> ROBERT L. OLSON, <u>Payment</u>, in WASH. STATE BAR ASS'N, WASHINGTON CONSTRUCTION LAW DESKBOOK § 10.3(2)(c), at 10-11 (2019). It appears well-established that parties may contractually select as the date of completion of the work either the date of substantial completion or the date of final completion. 5 BRUNER & O'CONNOR ON CONSTRUCTION LAW § 15:14 (2019 Update). But

---

[14] We similarly reject State Construction's argument that the date of "completion of the contract work" should be the date the City filed its Notice of Completion with the state agencies under RCW 60.28.051. This argument would require us to import words into the statute that do not exist. RCW 60.28.011(2) makes no reference to the date the owner notifies state agencies of the completion of the contract work. Our rules of statutory construction prohibit reading additional words into a statute. <u>Densley v. Dep't of Ret. Sys.</u>, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). The date the City filed a statutorily required Notice of Completion is not the date that triggered the 45-day deadline.

- 17 -

[u]nless otherwise defined by the contract to mean "final completion[,]" the date on which the work is 100 [percent] complete, "completion" ordinarily is understood to mean "substantial completion"—the date on which all material elements of the work are sufficiently complete in conformance with the contract so that the owner can use the work for its intended purpose.

Id. at § 15:15 (emphasis added).

Furthermore, under paragraph 9.8.4 of the General Conditions, the City's architect was required to inspect the work and issue a "Certificate of Substantial Completion." WERNER SABO, LEGAL GUIDE TO AIA DOCUMENTS § 4.56 SUBSTANTIAL COMPLETION: ¶ 9.8, at ¶ 9.8.4 (6th ed. 2019). This certificate would have established the date of substantial completion and started the warranty period. Id. "Final completion" would only have occurred after the contractor notified the owner that all the work was ready for final inspection, the architect inspected the work and deemed it acceptable under the contract documents, and the architect issued a certificate for final payment. Id. at § 4.58 FINAL COMPLETION AND FINAL PAYMENT: ¶ 9.10, at ¶ 9.10.1.

Although we have no certificate of substantial completion in the record before us, State Construction does not challenge that, as of April 1, 2016, a sufficient amount of construction had been completed so that the City could use the community and aquatic center for its intended purpose. Instead, State Construction argues, without evidence, that the City did not decide, until February 2017, ten months after-the-fact, that Porter Brothers had reached substantial completion on April 1, 2016. But there is no evidence in the record that the City failed to follow the process for determining and certifying substantial completion here.

Even if the City's certification were not legally conclusive, State Construction has not established a genuine issue of material fact that the substantial completion date provided by the City was not the date of "completion of the contract work" for purposes of RCW 60.28.011(2). Therefore, the contract work was completed on the Project as of April 1, 2016, and State Construction's notice of lien claim, filed on March 27, 2017, was untimely as it was not filed within the 45 days required by statute.

C. State Construction's Due Process Claim

State Construction next argues it had no notice that April 1, 2016 was the trigger date for filing a retainage lien claim and, as a result, the City violated its due process rights by failing to provide it notice.

Article I, section 3 of the Washington State Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." The Washington Supreme Court has held that the state due process clause is no broader than its federal counterpart. In re Dependency of E.H., 191 Wn.2d 872, 884-85, 427 P.3d 587 (2018). The loss of lien rights to funds held in trust under RCW 60.28.011 implicates a property interest protected by due process. The question is what process is due to protect subcontractors like State Construction against the erroneous deprivation of that property interest.

A procedural due process challenge under the state constitution turns on whether the increased accuracy afforded by additional procedures is outweighed by the government's legitimate reasons in denying more protections. Id. at 891. Our Supreme Court has employed the balancing test adopted by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d

- 19 -

18 (1976), to assess procedural due process challenges on a case-by-case basis. E.H., 191 Wn.2d at 891-92. The Mathews test requires a court to compare the status quo to the procedures sought and identify (1) the private interest involved, (2) the risk of an erroneous deprivation of that interest, and (3) the government's interest. 424 U.S. at 335.

The first Mathews factor requires us to identify the nature and weight of the private interest affected by the challenged action. Prostov v. Dep't of Licensing, 186 Wn. App. 795, 811, 349 P.3d 874 (2015) (quoting City of Redmond v. Moore, 151 Wn.2d 664, 670, 91 P.3d 875 (2004)). In this case, we agree that subcontractors like State Construction have a substantial interest in being paid by contractors and receiving full payment on public projects. The money deposited into the retainage fund was deducted from State Construction's invoices to Porter Brothers and, but for the retainage requirement, would have been paid to State Construction for its work. This factor weighs in favor of State Construction.

Under the second Mathews factor, we consider whether the risk of an erroneous deprivation of this private interest under the existing statutory scheme is unreasonable. See Prostov, 186 Wn. App. at 813-14. Here, if a subcontractor is unaware that the public owner and contractor have contractually agreed that the date of substantial completion will trigger the retainage lien statute, or does not know that a contractor has reached substantial completion, there is a risk that this subcontractor will miss the deadline to file a notice of lien claim.

But State Construction has not demonstrated that that risk is unreasonable. Subcontractors have multiple ways to protect their interest in the retainage fund, including negotiating with the contractor for advance notice of the lien filing

deadline, tracking the contractor's progress on the project and requesting records from the public owner as to the status of the contractor's progress, or filing lien claims regularly throughout the project. Courts have noted on several occasions that a claimant need not wait until project completion and acceptance to file a claim. Airefco, Inc. v. Yelm Cmty. Schs. No. 2, 52 Wn. App. 230, 232-34, 758 P.2d 996 (1988); see also Pearson, 99 Wash. at 598-600; Title Guar. & Sur. Co. v. Coffman, Dobson & Co., 97 Wash. 211, 213-15, 166 P. 620 (1917) (unnecessary to wait until end of project to file claim); Denny-Renton, 93 Wash. at 110 ("This works no hardship upon a reasonably prudent laborer or materialman. He is not required to wait for completion or acceptance of the work. He can file his claim as soon as he finishes furnishing labor or materials."); WASHINGTON CONSTRUCTION LAW DESKBOOK § 10.4(2), at 10-29 (acknowledging that it is safer to submit claim upon completion of subcontractor work instead of waiting for main contract completion). State Construction had methods by which it could protect its private interest in the retainage fund without imposing new notice requirements on the City. The second Mathews factor weighs against State Construction.

The third Mathews factor addresses the government's interest in the fiscal and administrative burden that additional procedural requirements would entail. Prostov, 186 Wn. App. at 816. The City has an interest in minimizing the administrative burden of having to track the identity of multiple subcontractors and suppliers on large public works projects and having to notify each one when the contractor achieves substantial completion.[15] The public works contracts and

---

[15] It is for this reason that State Construction argued, see supra note 14, the trigger date for filing lien and bond claims should be the date the Notice of Completion is filed with the state agencies,

certificates of substantial completion are available to the public, even if not available from the contractor. The third factor weighs against State Construction.

Given the subcontractors' ability to manage the risk associated with filing a timely notice of lien, and the burden a notice requirement would pose on public bodies managing large construction projects, we conclude that State Construction's due process rights were not violated by the City when it failed to notify it that Porter Brothers had achieved substantial completion under the contract.

D. Porter Brothers' Assignment of Retainage Funds

Next, State Construction maintains that because retainage funds are trust funds that cannot be assigned, Porter Brothers' assignment to Hartford is invalid. And if the assignment is invalid, it argues its judgment takes priority over any claim Hartford may have to the retainage funds. We reject both arguments and conclude that Porter Brothers had a property interest in excess retainage funds under RCW 60.28.021, and it lawfully assigned that interest to Hartford. Therefore, Hartford's assignment predated State Construction's judgment and has priority over it.

First, under RCW 60.28.021, any excess retainage funds, after payment of all taxes, timely lien claims, foreclosure costs, and attorney fees, must be paid to the contractor. In Johnson Service Co. v. Roush, 57 Wn.2d 80, 87, 89, 355 P.2d

i.e., subcontractors can search public records to ascertain when a public works contract has been completed. While this might be expeditious for all parties, that is not what the statutes provide, and we cannot rewrite or modify statutory language under the guise of statutory interpretation or construction. Garcia v. Dep't of Soc. & Health Svcs., __ Wn. App. 2d __, 451 P.3d 1107, 1123 (2019). We must give full effect to the plain language of the statutes, even when the results may seem harsh. Geschwind v. Flanagan, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993).

815 (1960), the Supreme Court held that the Internal Revenue Service (IRS) could not attach money on deposit in a retainage fund for taxes owed by a contractor because the funds were held in trust for payment to subcontractors and suppliers, "except to the extent that the claim of the [contractor] exceeds the aggregate of the claims of the subcontractors and the State Tax Commission." Because the retainage was exhausted by payment of timely lien claims, there was no balance to remit to the contractor and nothing to which the federal tax lien could attach. Id. at 89. But had there been funds sufficient to remit to the contractor, the IRS could have attached those funds to prevent their payment to the contractor.

RCW 60.28.011(1)(a) makes the retainage fund a "trust fund for the protection and payment" of claims arising under the contract. But once an owner determines that all taxes and timely lien claims have been paid, the contractor is entitled to the remaining funds. RCW 60.28.021; see also Fid. & Deposit, 14 Wn.2d at 568-69 (duty to remit remaining funds to contractor because "[i]t was clearly the contractor's money, and any retention would constitute an unlawful deprivation of the money").

Porter Brothers' assignment to Hartford only conveyed title to contract funds that were "due now or in the future." Under RCW 60.28.021, no retainage funds were due to Porter Brothers until all taxes and timely liens were paid. Just as Porter Brothers will not receive any excess funds from the retainage until all taxes and timely liens are paid, neither will Hartford. See Levinson v. Linderman, 51 Wn.2d 855, 861, 322 P.2d 863 (1958) ("An assignment of a sum of money due or to become due will pass to the assignee only so much as a construction of the instrument shows was intended to pass.") (quotation and citation omitted). We

- 23 -

conclude that Porter Brothers lawfully assigned to Hartford any excess retainage funds that it may be entitled to receive under RCW 60.28.021.

Second, because State Construction's lien was untimely, its lien against the retainage fund ceased to exist. "'The right to a lien ceases to exist when the designated period is over.'" Thompson v. Peninsula Sch. Dist. N. 401, 77 Wn. App. 500, 505, 892 P.2d 760 (1995) (quoting Shope, 41 Wn. App. at 131). Once State Construction's lien ceased to exist, the funds in the account based on State Construction's work became available to other lien claimants and, if any excess exists, to Porter Brothers or its secured creditors. The record is insufficient for the court to determine whether the retainage fund has any excess funds that would be payable to Porter Brothers. The City's certification lists over 20 lien claimants (in addition to State Construction) whose combined claims well exceed the $1.3 million in the retainage fund.

To the extent any excess funds in the retainage fund are due to Porter Brothers, Hartford, as a secured creditor, has a claim to those funds that takes priority over State Construction's judgment. A debtor's general assignment for the benefit of a creditor passes to the creditor all title to the property vested in the debtor and that title is superior to any unsecured creditor who acquires a judgment against the debtor thereafter. Steinberg v. Raymond, 50 Wn.2d 502, 503, 312 P.2d 824 (1957). Because Porter Brothers executed a valid assignment for the benefit of Hartford that included title to any excess funds that would otherwise be owing to Porter Brothers, and that assignment preceded State Construction's judgment, Hartford's interest is superior to that of State Construction.

E. Attorney Fee Award to Hartford

Lastly, State Construction argues that Hartford is not entitled to attorney's fees for two reasons—first, under RCW 60.28.030 and RCW 39.08.030, only the party claiming against the retainage fund and the bond may recover fees; and second, under RCW 39.04.240, State Construction's action does not arise out of a public works contract.

Washington courts may only award attorney fees "when doing so is authorized by a contract provision, a statute, or a recognized ground in equity." King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017). Generally, attorney fee awards are reviewed for an abuse of discretion. Guillen v. Contreras, 169 Wn.2d 769, 774, 238 P.3d 1168 (2010). But the "underlying question of which fees may be awarded pursuant to the statute is a question of law reviewed de novo." Olympic Peninsula Narcotics Enf't Team v. Real Prop. Known as (1) Junction City Lots 1 Through 12 Inclusive, Block 35, (2) Lot 2 of the Nelson Short Plat Located in Jefferson County, 191 Wn.2d 654, 661, 424 P.3d 1226 (2018).

Hartford's motion for attorney fees and costs was based on RCW 39.04.240(1), which provides:

> The provisions of RCW 4.84.250 through 4.84.280 shall apply to an action arising out of a public works contract in which the state or a municipality, or other public body that contracts for public works, is a party, except that: (a) The maximum dollar limitation in RCW 4.84.250 shall not apply; and (b) in applying RCW 4.84.280, the time period for serving offers of settlement on the adverse party shall be the period not less than thirty days and not more than one hundred twenty days after completion of the service and filing of the summons and complaint.

Under RCW 4.84.250 through .280, if a defendant makes a settlement offer to a plaintiff and the plaintiff subsequently recovers nothing or recovers an amount equal to or less than the settlement offer, the defendant is deemed the prevailing party entitled to recover attorney fees.

Hartford represented, and State Construction does not dispute, that it offered to settle State Construction's claims for $0 on August 29, 2017, a date within the deadlines prescribed in RCW 39.04.240 and RCW 4.84.280. State Construction did not accept this offer. Because State Construction recovered nothing in its suit, Hartford argued it was the prevailing party under RCW 4.84.270 and, as a result, entitled to attorney fees under RCW 39.04.240. The trial court agreed.

State Construction argues that RCW 60.28.030 and RCW 39.08.030 only permit a lien claimant to recover attorney fees. It contends the more general public works attorney fee statute, RCW 39.04.240, conflicts with the lien statutes and is thus inapplicable. It relies on Housing Authority of City of Everett v. Kirby, 154 Wn. App. 842, 856, 226 P.3d 222 (2010),[16] for this proposition. We decline to extend Kirby to public works contract disputes because of the mandatory nature of the language in RCW 39.04.240.

In Kirby, the Housing Authority brought an unsuccessful unlawful detainer action against Kirby, who then sought attorney fees under multiple statutes, including RCW 4.84.250 and .270. 154 Wn. App. at 846, 848. The Housing Authority noted that applying these statutes to residential unlawful detainer actions

---

[16] Abrogated on other grounds by Hous. Auth. of City of Seattle v. Bin, 163 Wn. App. 367, 260 P.3d 900 (2011).

- 26 -

would, in certain situations, create a conflict between them and the specific statute, RCW 59.18.290, that allowed landlords to recover attorney fees in residential unlawful detainer actions. Id. at 856. We affirmed the denial of Kirby's request for attorney fees, reasoning that it made no sense that a tenant, found guilty of non-payment of rent and subject to eviction, could become the prevailing party entitled to an award of attorney fees by offering to settle for less rent than the landlord claimed was owed. Id. at 856-57. Such an outcome, we concluded, would conflict with RCW 59.18.290, which authorizes a discretionary fee award to the landlord who prevailed in recovering possession of the premises. Id. We determined that RCW 59.18.290 superseded RCW 4.84.250 and .270. Id.

But the public works statute under which Hartford sought an award of attorney fees is distinguishable from the general language of RCW 4.84.250 and .270. RCW 39.04.240 provides that the provisions of RCW 4.84.250 through .280 "shall apply to an action arising out of a public works contract in which the state or a municipality . . . is a party." Additionally, the right to recover attorney fees under the settlement offer process set out in RCW 4.84.250 to .280 "may not be waived by the parties to a public works contract" entered into after June 11, 1992, and any contractual provision providing for such a waiver is void against public policy. RCW 39.04.240(2).

When the legislature uses the word "shall," we deem it to be mandatory. Khandelwal v. Seattle Mun. Court, 6 Wn. App. 2d 323, 337-38, 431 P.3d 506 (2018). In addition, the statute contains a significant legislative statement of public policy. The mandatory language of RCW 39.04.240 undermines State Construction's suggestion that the legislature intended RCW 60.28.030 and RCW

- 27 -

39.08.030(1)(b) to supersede it. We therefore conclude that RCW 60.28.030 and RCW 39.08.030(1) do not supersede RCW 39.04.240.

Finally, State Construction contends that RCW 39.04.240 does not apply because Hartford was not a party to the public works project contract and because its lien foreclosure action did not arise out of a public works contract. But State Construction misreads RCW 39.04.240.

By its language, RCW 39.04.240 applies when the state or a city is a party to a public works contract and is a party to a lawsuit arising out of that contract. The statute does not require that the party seeking attorney fees is a party to the underlying contract. See Puget Sound Elec. Workers Health & Welfare Tr. v. Lighthouse Elec. Grp., No. C12-276 RAJ, 2014 WL 2619921 (W.D. Wash. June 12, 2014) (granting the surety and the general contractor their attorney fees for time period that the State was a party to the action); see also Am. Safety Cas. Ins. Co. v. City of Olympia, 162 Wn.2d 762, 773, 174 P.3d 54 (2007) (awarding RCW 39.04.240 fees to the city as prevailing party in lawsuit brought by surety as assignee of the general contractor's rights under a public works construction project). It is undisputed that the City was a party to the dispute.

We also conclude that State Construction's action arose out of a public works contract. A public works contract is a condition precedent to a bond or retainage lien claim. See RCW 39.08.010(1) (public owner must require contractor to obtain bond); RCW 60.28.011(1) (public works contracts must set up retainage trust fund). Retainage and bond lien claims brought pursuant to RCW 39.08.010 and 60.28.011 thus arise out of a public works contract. Puget Sound Elec. Workers Health & Welfare Tr., 2014 WL 2619921, at *1.

- 28 -

We affirm the trial court's award of Hartford's attorney fees pursuant to RCW 39.04.240. Furthermore, because Hartford is the prevailing party on appeal, we award it attorney fees and costs pursuant to RAP 14.2, subject to its compliance with RAP 18.1.

Affirmed.

Andrus, J.

WE CONCUR:

Chun, J.